UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BENOIT BALDWIN,<br><br>        Plaintiff,<br><br>    v.<br><br>TOWN of WEST TISBURY,<br>RICHARD KNABEL,<br>individually and in his official capacity,<br>JEFFREY MANTER,<br>individually and in his official capacities,<br>CYNTHIA MITCHELL,<br>individually and in her official capacity,<br>JENNIFER RAND,<br>individually and in her official capacity,<br>RONALD RAPPAPORT,<br>individually and in his official capacity,<br>DANIEL ROSSI,<br>individually and in his official capacity,<br>GARRISON VIERA,<br>individually and in his official capacity,<br>DUKES COUNTY,<br>GEOFFREY FREEMAN,<br>individually and in his official capacity,<br>SAMANTHA CHURCH,<br>JAMES HICKEY,<br>KYLE NEWELL,<br>JOSEPH NOEL,<br>VINEYARD GAZETTE, LLC,<br>HEATHER HAMACEK,<br>MV TIMES CORPORATION and,<br>EDITH PRESCOTT,<br><br>        Defendants. | Civil Action No. _____ |

**VERIFIED COMPLAINT**

## INTRODUCTION

1.      This action arises out of a verbal altercation that occurred at the Martha's Vineyard Airport on July 22, 2016 between two taxi drivers—the plaintiff, Benoit Baldwin, and defendant Kyle Newell. Newell accused Baldwin of swapping cabs outside the airport taxi line, which Baldwin had not done. Baldwin at this time had been subjected to years of similar harassment by Newell, and responded with profanity and an ethnic slur. Newell secretly recorded the incident using his cell phone, in violation of federal and Massachusetts wiretap statutes. Newell then submitted a written complaint, containing a transcription of his illegal recording, to the airport assistant manager, who called the West Tisbury police. The police made a report and forwarded Newell's complaint to the West Tisbury board of selectmen. The selectmen took action against Baldwin, for alleged violation of the defendant town of West Tisbury's taxi regulations, ultimately voting to suspend Baldwin's permit to drive a taxi for two weeks in July and August 2017. The defendant newspapers reported that decision, without seeking comment from Baldwin. As a result of those news stories, Baldwin's taxi company lost major clients. For violations of Baldwin's rights, privileges, and immunities guaranteed by the First, Fourth, Fifth, and Fourteenth Amendments to United States Constitution, and conspiracy in furtherance thereof, Baldwin by this action seeks compensatory and punitive damages, and declaratory and injunctive relief pursuant to 42 U.S.C. §§ 1983 and 1985 and 28 U.S.C. §§ 2201 and 2202. Baldwin further seeks relief on pendent statutory and common law tort claims arising from the same set of facts.

## JURISDICTION

2.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343. This Court is empowered to issue declaratory judgment and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202. This Court may exercise supplemental jurisdiction over the plaintiff's state law and common law tort claims on the basis of 28 U.S.C. § 1367.

## PARTIES

3.      Plaintiff Benoit Baldwin (hereinafter "Baldwin") is a United States citizen and a resident of Dukes County, Massachusetts. At times relevant to this complaint, Baldwin was a taxi driver permitted by defendant town of West Tisbury, and co-owner of a taxi company licensed by the same.

4.      Defendant town of West Tisbury (hereinafter "West Tisbury") is a municipality located in Dukes County, Massachusetts, with its principal office at 1059 State Road, West Tisbury, MA 02575.

5.      Defendant Richard Knabel (hereinafter "Knabel") is a natural person who, upon information and belief, is a resident of Dukes County, Massachusetts, and who is by this action sued both individually and in his former official capacity as a selectman of the town of West Tisbury.

6.      Defendant Jeffrey Manter (hereinafter "Manter") is a natural person who, upon information and belief, is a resident of Dukes County, Massachusetts, and who is by this action sued both individually and in his official capacities as a police officer and a selectman of the town of West Tisbury.

7.      Defendant Cynthia Mitchell (hereinafter "Mitchell") is a natural person who, upon information and belief, is a resident of Dukes County, Massachusetts, and who is by this action sued both individually and in her official capacity as a selectman of the town of West Tisbury.

8.      Defendant Jennifer Rand (hereinafter "Rand") is a natural person who, upon information and belief, is a resident of Dukes County, Massachusetts, and who is by this action sued both individually and in her official capacity as town administrator of the town of West Tisbury.

9.      Defendant Ronald Rappaport (hereinafter "Rappaport") is a natural person who, upon information and belief, is a resident of Dukes County, Massachusetts, and who is by this action sued both individually and in his official capacity as town counsel of the town of West Tisbury.

10.     Defendant Daniel Rossi (hereinafter "Rossi") is a natural person who, upon information and belief, is a resident of Dukes County, Massachusetts, and who is by this action sued both individually and in his former official capacity as police chief of the town of West Tisbury.

11.     Defendant Garrison Viera (hereinafter "Viera") is a natural person who, upon information and belief, is a resident of Dukes County, Massachusetts, and who is by this action sued both individually and in his official capacity as a police officer of the town of West Tisbury.

12.     Defendant Dukes County (hereinafter "Dukes County") is a political subdivision of the Commonwealth of Massachusetts, with its principal office at 9 Airport Road, Edgartown, MA 02539. Dukes County owns and operates the Martha's Vineyard Airport (hereinafter "airport" or "MVY"), and permits licensed taxi companies on Martha's Vineyard to operate at the airport for a yearly fee and according to rules issued by the Dukes County Airport Commission.

13.     Defendant Geoffrey Freeman (hereinafter "Freeman") is a natural person who, upon information and belief, is a resident of Dukes County, Massachusetts and who is by this action sued both individually and in his official capacity as assistant manager of the Martha's Vineyard Airport.

14.     Defendant Samantha Church (hereinafter "Church") is a natural person who, upon information and belief, is a resident of Dukes County, Massachusetts. At times relevant to this complaint, Church and defendant James Hickey owned and operated taxi companies licensed by the towns of West Tisbury and Aquinnah, Massachusetts.

15.     Defendant James Hickey (hereinafter "Hickey") is a natural person who, upon information and belief, is a resident of Dukes County, Massachusetts. At times relevant to this complaint, Church and Hickey owned and operated taxi companies licensed by the towns of West Tisbury and Aquinnah, Massachusetts.

16.     Defendant Kyle Newell (hereinafter "Newell") is a natural person who, upon information and belief, is a resident of the State of Colorado. At times relevant to this complaint, Newell was a driver for a taxi company owned and operated by Church and Hickey.

17.     Defendant Joseph Noel (hereinafter "Noel") is a natural person who, upon information and belief, was at times relevant to this complaint a resident of the Commonwealth of Massachusetts. At times relevant to this complaint, Noel was a driver for a taxi company owned and operated by Church and Hickey.

18.     Defendant Vineyard Gazette, LLC (hereinafter "*Vineyard Gazette*") is a Massachusetts limited liability company, with its principal office at 34 South Summer Street, Edgartown, MA 02539. The company publishes the *Vineyard Gazette* newspaper in print, and online at www.vineyardgazette.com.

19.     Defendant Heather Hamacek (hereinafter "Hamacek") is a natural person who, upon information and belief, is a resident of the State of New York. At times relevant to this complaint, Hamacek was a reporter for the *Vineyard Gazette*.

20.     Defendant MV Times Corporation (hereinafter "*MV Times*") is a Massachusetts corporation, with its principal office at 30 Beach Road, Vineyard Haven, MA 02568. The company publishes the *MV Times* newspaper in print, and online at www.mvtimes.com.

21.     Defendant Edith Prescott (hereinafter "Prescott") is a natural person who, upon information and belief, is a resident of Dukes County, Massachusetts. At times relevant to this complaint, Prescott was a reporter for the *MV Times*.

## FACTS COMMON TO ALL COUNTS

22.     Baldwin managed the West Tisbury-licensed Bluefish Taxi on a year-round basis from 2007 to 2012, during which time the company was owned by Newell's uncle.

23.     Newell worked as a driver for Bluefish Taxi in 2011 and 2012.

24.     Newell was fired from Bluefish Taxi in September 2012 on Baldwin's recommendation, for insubordination and harassment towards Baldwin.

25.     In December 2012, after Newell's uncle informed Baldwin of the sale of Bluefish Taxi to Church and Hickey, Baldwin quit Bluefish Taxi and formed Alpha Taxi.

26.     Church and Hickey rehired Newell as a driver for Bluefish Taxi in 2013.

27.     Baldwin was thereafter subjected to harassment by Newell, which included spurious allegations to the West Tisbury police of taxi rules-breaking, and encouragement of harassment of Baldwin by others such as defendant Noel, who posted defamation against Baldwin on Yelp.com, and who made prank phone calls to Alpha Taxi's phone number.

28.     From 2013 to 2016, Baldwin complained numerous times about Newell's harassment, verbally and in writing to the West Tisbury police, and verbally to Hickey, who managed Bluefish Taxi on a daily basis. Baldwin demanded that Newell should not confront or communicate with him for any reason.

29.     On the morning of July 22, 2016, Baldwin had just moved his taxicab up to the first position in the taxi line at the Martha's Vineyard Airport, when Newell approached and accused Baldwin of swapping cabs outside the line.

30.     Newell secretly recorded this confrontation on his cell phone.

31.     Baldwin had not swapped cabs outside the airport taxi line.

32.     Baldwin called Newell a "kike" several times, saying Newell had seen "nothing."

33.     Just minutes after this interaction, Officer Leomar DeOliveira (hereinafter

"DeOliveira"), a West Tisbury police officer on duty at the airport that morning, interviewed Baldwin and Newell separately, and determined Newell's allegation that Baldwin had swapped cabs outside the airport taxi line had no basis in fact. Officer DeOliveira took no further action, not even writing an incident report.

34.     On August 1, 2016, Newell approached defendant airport assistant manager Freeman at the Martha's Vineyard Airport with a written complaint letter concerning the July 22, 2016 incident with Baldwin.

35.     Newell's complaint letter, dated August 1, 2016, (hereinafter "Newell's complaint letter") was addressed to the "airport manager of MVY and the selectmen of the town of West Tisbury."

36.     Newell's complaint letter repeated the allegation that Baldwin had swapped cabs outside the airport taxi line, but omitted any mention of Officer DeOliveira's investigation of that claim.

37.     Newell's complaint letter contained a verbatim transcription of his secret recording of the July 22, 2016 confrontation with Baldwin, and an offer by Newell to play the recording for the letter's addressees.

38.     Newell's complaint letter further stated "Even though it may not be used in a court of law, I recorded the entire interaction on my phone."

39.     After reading Newell's complaint letter, Freeman called defendant Rossi, who was at that time West Tisbury's chief of police. Rossi dispatched defendant West Tisbury police officer Viera to the airport, where Viera met with Freeman and Newell.

40.     Officer Viera wrote a report of the meeting with Freeman and Newell, West Tisbury Police Department incident report #2016001385 (hereinafter "Viera's report").

41.     Viera's report was approved by defendant Jeffrey Manter, who was then a West

Tisbury police sergeant and a member of the West Tisbury board of selectmen.

42.     Viera's report and Newell's complaint letter were faxed to defendant town administrator Rand on or about August 2, 2016.

43.     The West Tisbury board of selectmen (hereinafter "the Board"), comprised of defendants Knabel, Manter and Mitchell, discussed Viera's report and Newell's complaint letter at the Board's weekly meeting on August 10, 2016. The Board voted to send Baldwin a letter of inquiry.

44.     On the afternoon of Friday, August 19, 2016, Baldwin received a letter from Knabel, in his capacity as chairman of the West Tisbury board of selectmen.

45.     The letter began with the statement, "The Board of Selectmen have been provided with a copy of an incident report filed with the West Tisbury Police Department on August 1, 2016 regarding an incident that reportedly took place on July 22, 2016 at the MV Airport."

46.     The Board's letter quoted Sections 6.4 and 6.8 of West Tisbury's taxi regulations, which—taken with the letter's contents as a whole—placed Baldwin in fear of having his permit to drive a taxi revoked or suspended.

47.     However, the Board's letter failed to state any specific allegations against Baldwin.

48.     No copy of the police incident report referenced in the Board's letter was attached, nor did the Board's letter include any details of the alleged incident on July 22, 2016.

49.     As a great number of incidents had occurred on and since that date, Baldwin had no idea to what incident the Board's letter referred.

50.     At around 1:15 p.m. on August 19, 2016, Baldwin was let into the West Tisbury police station at 454 State Road, West Tisbury, by then-Sergeant Manter.

51.     Baldwin requested from Manter a copy of the police incident report referenced in

the Board's letter.

52.     Manter directed Baldwin to see defendant town administrator Rand, whose office is at the West Tisbury town hall, three miles away from the police station.

53.     Baldwin asked Manter how he was to respond to the Board about an incident of which he had no knowledge.

54.     Manter again directed Baldwin to see Rand, and said, "Police reports are not public information."

55.     Baldwin could see no good reason why he was being forced to obtain a police report from a place other than the police department that issued it, and did not go to see Rand.

56.     On August 23, 2016, Baldwin posted on Alpha Taxi's Facebook page an open letter addressed to Knabel, decrying Manter's violation of the Massachusetts Public Records Law and Baldwin's due process right to know the nature and cause of the accusation against him.

57.     Baldwin shared the open letter to Knabel in "Islanders Talk...," a closed Facebook group with thousands of members, devoted primarily to the affairs of year-round residents of Martha's Vineyard. Baldwin noticed the open letter ("tagged" in Facebook parlance) to parties of interest with Facebook accounts, including at least Rand and selectman Mitchell.

58.     Without further action by Baldwin, he received by mail from defendant Rossi, on or about September 6, 2016, a copy of Viera's report.

59.     Receipt of Viera's report gave notice to Baldwin of Newell's complaint letter, which Baldwin then requested by mail from Rand.

60.     On receipt of Newell's complaint letter around a week later, Baldwin realized that Newell had secretly recorded their July 22, 2016 confrontation.

61.     Baldwin immediately complained at the Massachusetts State Police barracks in Oak Bluffs, where Sergeant Jeffrey Stone told Baldwin he should complain to the proper local

police department. Baldwin explained that the West Tisbury Police Department had the evidence and used it against him instead of Newell. Sergeant Stone advised Baldwin he could file an application for a criminal complaint himself.

62.     Baldwin filed an application for a criminal complaint against Newell in Edgartown District Court on September 16, 2016, for violation of the Massachusetts wiretap law, M.G.L. c. 272, § 99 *et seq*. The application was denied on September 30, 2016.

63.     At their weekly meeting on October 19, 2016, the West Tisbury board of selectmen discussed Baldwin's alleged lack of response to their August 10, 2016 letter of inquiry, and voted to resend the letter.

64.     On October 20, 2016, Rand resent the Board's letter of inquiry, again failing to include any specific allegation as to how Baldwin had violated any taxi regulation. Baldwin did not respond.

65.     The Board discussed Baldwin's continued lack of response at their weekly meeting on November 2, 2016. Rand admitted to the Board that Newell had not requested a hearing, but she had applied West Tisbury's taxi regulations to the allegations in Newell's complaint letter, and "one could argue" there had been a violation. The Board directed Rand to contact Newell and ask if he could participate in a hearing.

66.     Rand reported to the Board at their weekly meeting on November 9, 2016 that Newell was currently in Florida, was moving to Colorado, and would not be available in person. The Board directed Rand to ask the town counsel whether a hearing needed to be advertised and whether it would be permitted for Newell to testify by phone.

67.     At some point between November 9 and November 16, 2016, defendant West Tisbury town counsel Rappaport advised Rand that a hearing on Newell's complaint did not need to be advertised, and that it was at the Board's discretion to allow Newell to participate by phone.

68.     At their weekly meeting on November 16, 2016, the Board directed Rand to arrange a date for a hearing on Newell's complaint.

69.     Rand sent Baldwin a letter dated December 22, 2016, informing him simply that a hearing on Newell's complaint would be held by the Board on January 11, 2017. The letter failed to mention that Newell would be participating by phone, or that it would be the final adjudicatory hearing.

70.     An email sent to Baldwin by Rand on January 6, 2017 was similarly devoid of explanation as to the nature of the January 11, 2017 hearing.

71.     At the January 11, 2017 hearing, which Baldwin did not attend, Newell participated by speakerphone.

72.     At no point in the January 11, 2017 hearing—nor at any of the Board's prior discussion of the matter on the record—were specific details of Newell's complaint divulged or discussed.

73.     Knabel merely asked Newell if his written complaint letter was a fair explanation of what had happened, and Newell replied "Yes. Absolutely."

74.     Newell was then asked if he had any additional comments, and proceeded to slander Baldwin by conflating his private grudges with Baldwin's fitness in his profession.

75.     The Board ended the proceedings as it had begun: by failing to state on the record specifically what Baldwin had done to violate the West Tisbury taxi regulations.

76.     Defendant town administrator Rand merely recited the text of West Tisbury Taxi Regulation 6.4, the Board deliberated, and voted to suspend Baldwin's permit to drive a taxi for two weeks beginning July 22, 2017.

77.     In deliberating Baldwin's punishment, defendant selectman Mitchell stated "While this is documented, and on the record, there is—as I understand it—significant anecdotal

information about Mr. Baldwin having taken these liberties in other situations."

78.     On or about January 12, 2017, defendant *Vineyard Gazette* published on its website at www.vineyardgazette.com an article by defendant Hamacek entitled "West Tisbury Taxi Driver Faces Two-Week Suspension." The article included a summary of Newell's written complaint ("Among other things Mr. Newell claimed that Mr. Baldwin used an ethnic slur against him after there was some argument over a swap of vehicles in the taxi line.") and a summary of the January 11, 2017 hearing on the matter by the West Tisbury board of selectmen.

79.     Neither Hamacek nor anyone else representing the *Vineyard Gazette* attempted to contact Baldwin for comment prior to the publication of the aforementioned article.

80.     On or about January 18, 2017 defendant *MV Times* published on its website at www.mvtimes.com an article by defendant Prescott entitled "West Tisbury selectmen suspend taxi license at hearing."

81.     Prescott's article extensively quoted Newell's complaint letter, including that portion which was a transcription of his illegal recording.

82.     On or about January 19, 2017, Prescott's article was published in the weekly print edition of the *MV Times*.

83.     Neither Prescott nor anyone else representing the *MV Times* attempted to contact Baldwin for comment prior to the publication of the aforementioned article.

84.     On or about January 20, 2017, Prescott's *MV Times* article was shared in the "Islanders Talk..." Facebook group.

85.     Shortly thereafter, defendant Noel posted in the discussion thread under Prescott's article in "Islanders Talk..." the following: "I saw it. It was so bad." Another poster in the thread replied to Noel: "you were there? Damn. What ugliness." Noel replied: "I saw a video of it. I'm good friends with the person he was saying those nasty things to."

86.     Colin Ewing, manager of Cape Air MVY, sent Baldwin an email on January 24, 2017 terminating Cape Air's business relationship with Alpha Taxi, citing "recent events highlighted in the news regarding your actions this past summer and the subsequent West Tisbury Board of Selectmen's action" as the reason.

87.     Baldwin confronted defendant Rossi at the West Tisbury police station the morning of February 6, 2017. Baldwin asked why the police had forwarded Newell's written complaint to the selectmen. Rossi responded "because he [Newell] asked us to" and that taxi drivers' behavior came under the authority of the selectmen to regulate.

88.     Rossi claimed that Newell's complaint had initially been investigated as a "hate crime," but it was determined the incident did not rise to that level.

89.     Baldwin complained that Newell had recorded him illegally. Rossi denied that a wiretap law violation had occurred, claiming there was some distinction between indoor and outdoor recording, and told Baldwin he could file an application for a criminal complaint himself.

90.     Later that same morning, Baldwin received a phone call from representatives of Quest Diagnostics, who terminated their company's business relationship with Alpha Taxi, citing the recent news about Baldwin's verbal altercation with Newell as the reason.

91.     On March 13, 2017, Baldwin filed an action in the nature of certiorari pursuant to M.G.L. c. 249, § 4 in Dukes County Superior Court, to review and reverse the decision of the West Tisbury board of selectmen to suspend his taxi driver permit ("the certiorari action").

92.     Pursuant to Mass. Super. Ct. Standing Order 1-96(2), the board filed on June 12, 2017 its administrative record in the certiorari action, a copy of which Baldwin received on or about the same day.

93.     Item # 8 of the administrative record in the certiorari action was an email from

defendant Church to town administrator Rand dated October 27, 2016, in which Church described a June 8, 2014 verbal altercation between Newell and Baldwin at the airport, which— unknown to Baldwin—Newell had also recorded on his cell phone.

94.     The email from Church to Rand included the following statements: "The incident on July 22 is more alarming considering a few weeks earlier Mr. Baldwin wrote a series of remarks on the Martha's Vineyard Times website that were offensive toward people of the Jewish faith. The newspaper has since removed the online comments from their web-site, although I was able to print out copies of the remarks before they were taken down."

95.     Item # 7 of the administrative record in the certiorari action was an email forwarded to Rand on October 27, 2016 by Hickey, an exchange between Church and a Bluefish Taxi customer regarding the June 8, 2014 incident between Baldwin and Newell.

96.     Neither the Item # 7 nor the Item # 8 emails had been disclosed to Baldwin prior to the Board's January 11, 2017 hearing on Newell's complaint against Baldwin.

97.     Baldwin filed a motion on July 21, 2017 to stay execution of the Board's suspension of his permit to drive a taxi, pending the outcome of the certiorari action.

98.     The motion for stay was denied, and the two-week suspension of Baldwin's permit to drive a taxi was carried out, from July 22, 2017 to August 4, 2017.

## CAUSES OF ACTION

### COUNT I: 42 U.S.C. § 1983—Deprivation of Freedom of Speech

*(Against Defendants Town of West Tisbury, Richard Knabel, Jeffrey Manter, Cynthia Mitchell, Jennifer Rand, Ronald Rappaport, Daniel Rossi, Garrison Viera, Dukes County, and Geoffrey Freeman)*

99.     The allegations set forth in Paragraphs 1 to 98 of this complaint are realleged and incorporated here as if fully set forth.

100.    On the basis of the plaintiff's speech as secretly recorded by defendant Newell on July 22, 2016, defendants Knabel, Manter, Mitchell, Rand, Rappaport, Rossi, Viera and Freeman, under color of law, subjected the plaintiff to proceedings that included police investigation and that resulted in the suspension of his permit to drive a taxi.

101.    On the basis of the plaintiff's speech as secretly recorded by defendant Newell on July 22, 2016, defendant Geoffrey Freeman acted against the plaintiff under the policy of defendant Dukes County, namely its rules for airport taxis, and under its custom of having West Tisbury police enforce those rules.

102.    On the basis of the plaintiff's speech as secretly recorded by defendant Newell on July 22, 2016, defendants Knabel, Manter, Mitchell, Rand, Rappaport, Rossi, and Viera acted against the plaintiff under the policy of defendant town of West Tisbury, namely its taxi regulations issued by the West Tisbury board of selectmen pursuant to M.G.L. c. 40, § 22.

103.    As a result of the aforesaid acts by the defendants named in this Count, depriving him of freedom of speech, the plaintiff suffered mental anguish, emotional distress, loss of income, and other monetary damages, in addition to deprivation of his civil rights, for which the plaintiff seeks redress pursuant to 42 U.S.C. § 1983.

**COUNT II: 42 U.S.C. § 1983—Unreasonable Search and Seizure, Violation of Privacy**

*(Against Defendants Town of West Tisbury, Richard Knabel, Jeffrey Manter, Cynthia Mitchell, Jennifer Rand, Ronald Rappaport, Daniel Rossi, Garrison Viera, Dukes County, and Geoffrey Freeman)*

104.    The allegations set forth in Paragraphs 1 to 103 of this complaint are realleged and incorporated here as if fully set forth.

105.    The plaintiff's speech, in the form of the transcription made by defendant Newell of his interception of the plaintiff's oral communications on July 22, 2016, was searched and

seized by defendants town of West Tisbury, Knabel, Manter, Mitchell, Rand, Rappaport, Rossi, Viera, Dukes County, and Freeman in violation of the plaintiff's rights to privacy and to be secure from unreasonable searches and seizures guaranteed by the Fourth and Fourteenth Amendments to United States Constitution and Article 14 of the Massachusetts Declaration of Rights.

106.    As a result of the aforesaid acts by the defendants named in this Count, depriving him of his rights to privacy and to be secure from unreasonable searches and seizures, the plaintiff suffered mental anguish, emotional distress, loss of income, and other monetary damages, in addition to deprivation of his civil rights, for which the plaintiff seeks redress pursuant to 42 U.S.C. § 1983.

### COUNT III: 42 U.S.C. § 1983—Deprivation of Right to Procedural Due Process

*(Against Defendants Town of West Tisbiry, Richard Knabel, Jeffrey Manter, Cynthia Mitchell, Jennifer Rand, Ronald Rappaport, Daniel Rossi and Garrison Viera)*

107.    The allegations set forth in Paragraphs 1 to 98 of this complaint are realleged and incorporated here as if fully set forth.

108.    Section 12.3 of the Town of West Tisbury Taxi Regulations (effective September 10, 2009) states, in relevant part, "The Board or Police Department shall pursue no complaint unless such complaint is received in writing. Said complaint must be received by the Police Department no later than seven (7) days after the alleged incident unless extenuating circumstances do not allow for this."

109.    Defendant Kyle Newell's complaint letter, containing unsworn allegations against the plaintiff, was dated and submitted to the West Tisbury Police Department on August 1, 2016, ten days after the incident on July 22, 2016.

110.    There were no extenuating circumstances that did not allow for Newell to submit his complaint within the seven days required, and it was therefore time barred.

111. Defendant Newell made the secret recording of the plaintiff's oral communications on July 22, 2016 with the knowledge and intent that it would be a secret recording, which was a violation of the Massachusetts wiretap law, M.G.L. c. 272, § 99 *et seq.*

112. Newell made the secret recording of the plaintiff's oral communications on July 22, 2016 for the purpose of criminal harassment, slander, libel, and intentional infliction of emotional distress against the plaintiff and tortious interference with the plaintiff's business.

113. Pursuant to 18 U.S.C. § 2515 and 18 U.S.C. § 2511(2)(d), Newell's August 1, 2016 written complaint was therefore inadmissible as evidence in the proceedings against the plaintiff by defendants Rand, Knabel, Manter, and Mitchell between August 2, 2016 and January 11, 2017.

114. For the same reasons, evidence derived from Newell's June 8, 2014 interception of the plaintiff's oral communications, as was submitted in an email to defendant Rand by defendant Church on October 27, 2016, was also inadmissible in said proceedings.

115. Defendant Jeffrey Manter refused to provide the plaintiff with Viera's report referenced in the August 10, 2016 letter from the West Tisbury board of selectmen to the plaintiff, thereby obstructing plaintiff's attempt to discover the nature of the offense implied therein, and the evidence in support thereof.

116. As Viera's report, West Tisbury Police Department incident #2016001385, was approved by Manter, Manter had an impermissible conflict of interest when he went on to act on that report as a member of the West Tisbury board of selectmen.

117. Manter, acting as a West Tisbury selectman, acted and voted on Newell's complaint and Viera's report, both matters under the purview of the West Tisbury police department, in violation of M.G.L. c. 268A, § 20, the conflict of interest statute.

118. Manter acted on Newell's complaint against the plaintiff in an impermissible

combination of prosecutorial and judicial functions, in violation of the plaintiff's right to due process.

119.   At the time Newell submitted his complaint, Knabel, Manter, Mitchell, Rand, and Rossi were defendants in a case filed by the plaintiff in this Court (Civil Action No. 16-cv-10736-ADB), alleging they had violated the plaintiff's rights to due process and equal protection in failing to regulate Uber and Lyft.

120.   Defendants Knabel, Manter, Mitchell, Rand, and Rossi therefore had an impermissible conflict of interest in their respective contributions to the pursuit of Newell's complaint against the plaintiff.

121.   Defendant Ronald Rappaport's legal advice to the Board, that resulted in Newell testifying by phone, was instrumental in permitting the proceedings to go to their end.

122.   The "significant anecdotal evidence" of prior taking of "liberties" by the plaintiff, referred to by defendant Mitchell at the January 11, 2017 hearing, was likely the October 27, 2016 emails to Rand from Church and Hickey.

123.   The aforementioned deprivation of the plaintiff's procedural due process rights by defendants Knabel, Manter, Mitchell, Rand, Rappaport, Rossi, and Viera occurred under the policy of defendant town of West Tisbury, namely its taxi regulations issued by the West Tisbury board of selectmen pursuant to M.G.L. c. 40, § 22.

124.   In proceeding on an unsworn, time-barred complaint, in failing to provide adequate notice to the plaintiff of his alleged offense, in obstructing the plaintiff's discovery of evidence, in Manter acting as prosecutor and judge, in using illegal evidence, in using undisclosed evidence, in depriving the plaintiff of his right to confront accusers and witnesses, in proceeding with conflicts of interest, in failing to provide the plaintiff with adequate notice of hearing, in failing to provide adequate notice of their final decision, defendants town of West

Tisbury, Knabel, Manter, Mitchell, Rand, Rappaport, Rossi, and Viera, under color of law, deprived the plaintiff of liberty and property without due process of law, in violation of the plaintiff's rights guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and Articles 1, 10, and 12 of the Massachusetts Declaration of Rights.

125.   As a result of the aforesaid acts by the defendants named in this Count, depriving him of procedural due process, the plaintiff suffered mental anguish, emotional distress, loss of income, and other monetary damages, in addition to deprivation of his civil rights, for which the plaintiff seeks redress pursuant to 42 U.S.C. § 1983.

### COUNT IV: 42 U.S.C. § 1983—Deprivation of Right to Substantive Due Process

*(Against Defendants Town of West Tisbury, Richard Knabel, Jeffrey Manter, Cynthia Mitchell, Jennifer Rand, Ronald Rappaport, Daniel Rossi, Garrison Viera, Dukes County, and Geoffrey Freeman)*

126.   The allegations set forth in Paragraphs 1 to 103 of this complaint are realleged and incorporated here as if fully set forth.

127.   Defendants West Tisbury, Knabel, Manter, Mitchell, Rand, Rappaport, Rossi, Viera, Dukes County, and Freeman, under color of law, in pursuing Newell's complaint against him, injured the plaintiff in a manner unjustified by any government interest, in a procedure unauthorized by any law, in violation of federal and Massachusetts wiretap laws, with malice and with shockingly reckless disregard for the plaintiff's rights, and created a danger for further abuse of the plaintiff by third parties, which was actualized by the defendant newspapers' reporting.

128.   As a result of the aforesaid acts by the defendants named in this Count, depriving him of substantive due process, the plaintiff suffered mental anguish, emotional distress, loss of income, and other monetary damages, in addition to deprivation of his civil rights, for which the plaintiff seeks redress pursuant to 42 U.S.C. § 1983.

## COUNT V: 42 U.S.C. § 1983—Deprivation of Right to Equal Protection

*(Against Defendants Town of West Tisbury, Richard Knabel, Jeffrey Manter, Cynthia Mitchell,*

*Jennifer Rand, Ronald Rappaport, Daniel Rossi, Garrison Viera, Dukes County, and Geoffrey*

*Freeman)*

129.   The allegations set forth in Paragraphs 1 to 98 of this complaint are realleged and incorporated here as if fully set forth.

130.   The plaintiff and defendant Kyle Newell were similarly situated in the July 22, 2016 incident that was the basis for Newell's August 1, 2016 complaint letter.

131.   On the basis of the allegations in Newell's complaint letter, defendants Knabel, Manter, Mitchell, Rand, Rappaport, Rossi, Viera and Freeman, under color of law, took selective action against the plaintiff for assumed and alleged violations of law, but not against Newell for his clear violation of federal and Massachusetts wiretap laws.

132.   The selective action against the plaintiff by defendant Geoffrey Freeman was taken under the policy of defendant Dukes County, namely its rules for airport taxis, and under its custom of having West Tisbury police enforce those rules.

133.   The selective action and punishment against the plaintiff by defendants Knabel, Manter, Mitchell, Rand, Rappaport, Rossi, and Viera were taken under the policy of defendant town of West Tisbury, namely its taxi regulations issued by the West Tisbury board of selectmen pursuant to M.G.L. c. 40, § 22.

134.   The selective action and punishment against the plaintiff by defendants West Tisbury, Knabel, Manter, Mitchell, Rand, Rappaport, Rossi, Viera, Dukes County, and Freeman violated the plaintiff's right to equal protection of the laws guaranteed by the Fourteenth Amendment to the United States Constitution and Articles 1 and 10 of the Massachusetts Declaration of Rights.

135.    As a result of the aforesaid acts by the defendants named in this Count, depriving him of the equal protection of the laws, the plaintiff suffered mental anguish, emotional distress, loss of income, and other monetary damages, in addition to deprivation of his civil rights, for which the plaintiff seeks redress pursuant to 42 U.S.C. § 1983.

### COUNT VI: 42 U.S.C. § 1985(3)—Conspiracy for Deprivation of Rights

*(Against Defendants Richard Knabel, Jeffrey Manter, Cynthia Mitchell, Jennifer Rand, Ronald Rappaport, Daniel Rossi, Garrison Viera, Geoffrey Freeman, Samantha Church, James Hickey, and Kyle Newell)*

136.    The allegations set forth in Paragraphs 1 to 141 of this complaint are realleged and incorporated here as if fully set forth.

137.    As concerns freedom of conscience, freedom of expression, and freedom of speech, all of which are protected by the First and Fourteenth Amendments to the United States Constitution and by Article 16 of the Massachusetts Declaration of Rights, "anti-Semites" and "bigots" are classes of natural persons as equally protected as "Jews."

138.    Defendants Knabel, Manter, Mitchell, Rand, Rappaport, Rossi, Viera, Freeman, Church, Hickey, and Newell, motivated by their animus towards the plaintiff's membership, believed or actual, in the classes of natural persons known as "anti-Semites" and/or "bigots," conspired to deprive the plaintiff of the equal protection of, and equal privileges and immunities guaranteed by, the First, Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, and Articles 1, 10, 12, 14, and 16 of the Massachusetts Declaration of Rights.

139.    Defendants Knabel, Mitchell, Rand, and Rossi, through statements both on and off the official record, and through official action and inaction, demonstrated an animus towards taxi drivers and taxi company owners.

140.    Defendants Knabel, Mitchell, Rand, and Rossi, motivated by their animus

towards the plaintiff's membership in the classes of natural persons known as "taxi drivers" and

"taxi company owners," conspired to deprive the plaintiff of the equal protection of, and equal

privileges and immunities guaranteed by, the First, Fourth, Fifth, and Fourteenth Amendments to

the United States Constitution, and Articles 1, 10, 12, 14, and 16 of the Massachusetts

Declaration of Rights.

141.    As a result of the aforesaid conspiracies by the defendants named in this Count,

which deprived the plaintiff of freedom of speech, privacy, security from unreasonable searches

and seizures, and procedural and substantive due process, the plaintiff suffered mental anguish,

emotional distress, loss of income, and other monetary damages, in addition to deprivation of his

civil rights, for which he seeks redress pursuant to 42 U.S.C. § 1985(3).

## COUNT VII: Vagueness and Overbreadth of Taxi Regulation

### *(Against Defendant Town of West Tisbury)*

142.    The allegations set forth in Paragraphs 1 to 98 of this complaint are realleged and

incorporated here as if fully set forth.

143.    Town of West Tisbury Taxi Regulation 6.4 is as follows: "Taxicab operators shall

conduct themselves in a courteous and professional manner at all times. No operator may

interfere with the business of another taxicab once the fare is onboard."

144.    Town of West Tisbury Taxi Regulation 6.4 is vague and overbroad, both on its

face and as applied, in violation of the plaintiff's rights to freedom of speech and due process

protected by the United States Constitution and Massachusetts Constitution, in light of its actual

use against the plaintiff.

## COUNT VIII: Constitutionality of Hate Crime and Group Libel Laws

### *(To Be Noticed to the Massachusetts Attorney General Pursuant to F.R.C.P. 5.1)*

145.    The allegations set forth in Paragraphs 1 to 98 of this complaint are realleged and

incorporated here as if fully set forth.

146.    According to former-chief of West Tisbury police defendant Daniel Rossi, the
plaintiff was, upon defendant Newell's August 1, 2016 complaint, investigated under a hate crime
law, unspecified by Rossi.

147.    The essence of the plaintiff's chief complaint in this action is that he was
subjected to a de facto "hate speech" prosecution by local government authorities.

148.    The plaintiff therefore challenges the constitutionality of any law resembling a
hate crime or "hate speech" statute to which he is or may be subject, including, but not limited
to, M.G.L. c. 22C, § 33, M.G.L. c. 265, §§ 37 and 39, M.G.L. c. 266, § 127A, M.G.L. c. 272, §
92A, and 501 CMR 4.00, in that they are vague, overbroad, impermissibly content-based, a prior
restraint, and/or are otherwise unconstitutional, in respect to freedom of speech and other rights
protected by the United States Constitution and/or Massachusetts Constitution.

149.    In particular, the data collection scheme set up by 501 CMR 4.00, pursuant to
M.G.L. c. 22C, § 33, is an example of Thought Police surveillance straight out of George
Orwell's *Nineteen Eighty-Four,* and is a content-based prior restraint on the plaintiff's freedom of
speech. It is entirely possible that the July 22, 2016 incident between the plaintiff and defendant
Newell ended up reported to the "Crime Reporting Unit" of the Massachusetts State Police as a
"hate incident" by either the West Tisbury police or one of the unnamed "reliable sources" in 501
CMR 4.06.

150.    Given the collection and reporting of the plaintiff's speech, to the West Tisbury
board of selectmen by defendant Samantha Church ("Mr. Baldwin wrote a series of remarks …
that were offensive toward people of the Jewish faith. … I was able to print out copies of the
remarks …"), the plaintiff believes himself at risk of prosecution under M.G.L. c. 272, § 98C.

151.    M.G.L. c. 272, § 98C, criminalizing "Libel of Groups of Persons Because of

Race, Color or Religion," is on its face an unconstitutional content-based prior restraint on the plaintiff's freedom of speech as guaranteed by the First and Fourteenth Amendments to the United States Constitution and Article 16 of the Massachusetts Declaration of Rights.

152.    The imminent threat to the plaintiff, and actual controversy that exists, is shown by a recent article that cites the above Massachusetts "group libel" statute, and which opines "[E]veryone needs to think again about the proper balance between free speech and hate speech in American civil-rights law." ("An Abandoned Weapon in the Fight Against Hate Speech," James Loeffler, www.theatlantic.com, June 16, 2019.

153.    No one needs to think again about the proper balance between free speech and "hate speech" in American civil-rights law. ("Supreme Court unanimously reaffirms: There is no 'hate speech' exception to the First Amendment," Eugene Volokh, www.washingtonpost.com, June 19, 2017, reporting the decision in *Matal v. Tam*, 137 S. Ct. 1744 (2017)).

### COUNT IX: Violations of M.G.L. c. 272, § 99 *et seq.*

*(Against All Defendants)*

154.    The allegations set forth in Paragraphs 1 to 98 of this complaint are realleged and incorporated here as if fully set forth.

155.    Defendant Kyle Newell used his cell phone to secretly record the plaintiff's oral communications at the Martha's Vineyard Airport on July 22, 2016.

156.    Newell used the contents of that secret recording in his written complaint letter against the plaintiff dated August 1, 2016.

157.    Newell's secret recording of the plaintiff's oral communications on July 22, 2016 and use of the contents thereof were done in the course of his employment by defendants Samantha Church and James Hickey.

158.    Defendant Geoffrey Freeman used Newell's complaint letter on August 1, 2016.

159.    Freeman's use of Newell's complaint letter was done in the course of Freeman's employment by defendant Dukes County.

160.    Defendants Daniel Rossi, Garrison Viera, and Jeffery Manter used Newell's complaint letter to produce West Tisbury Police Department incident report #2016001385.

161.    The use of Newell's complaint letter by Rossi, Viera, and Manter was done in the course their employment by defendant town of West Tisbury.

162.    Newell's complaint letter was used by defendants Jennifer Rand, Richard Knabel, Jeffrey Manter, and Cynthia Mitchell in their proceedings against the plaintiff between August 2, 2016 and January 11, 2017 for alleged violation of West Tisbury's taxi regulations.

163.    The use of Newell's complaint letter by Rand, Knabel, Manter, and Mitchell was done in the course their employment by defendant town of West Tisbury.

164.    Defendant Ronald Rappaport facilitated the use of Newell's complaint letter by rendering legal advice to Rand, Knabel, Manter and Mitchell that furthered their proceedings against the plaintiff.

165.    Rappaport's legal advice to Rand, Knabel, Manter and Mitchell was rendered in the course of his employment by defendant town of West Tisbury.

166.    Defendant Church referenced Newell's July 22, 2016 secret recording of the plaintiff's oral communications in her October 27, 2016 email to defendant Jennifer Rand.

167.    Defendant Heather Hamacek used Newell's complaint letter as a source for her January 12, 2017 article published by defendant Vineyard Gazette, LLC's on its website.

168.    Defendant Edith Prescott used Newell's complaint letter as a source for her January 18, 2017 article published by defendant MV Times Corporation on its website, and in print on January 19, 2017.

169.    Defendant Joseph Noel's referenced Newell's July 22, 2016 secret recording of the

plaintiff's oral communications in posts on Facebook on or after January 20, 2017.

170.   The aforementioned unauthorized interception and uses of the plaintiff's oral
communications by the defendants named in this Count were done in violation of M.G.L. c. 272,
§ 99 *et seq.*

171.   As a result of the unauthorized interception and uses of the plaintiff's oral
communications by the defendants named in this Count, the plaintiff was irreparably injured in
his profession, suffered severe financial losses, suffered great mental anguish and emotional
distress, was exposed to hatred, ridicule, and contempt, and his reputation was irreparably
injured in the community both local and global.

172.   Plaintiff seeks redress for the defendants' unauthorized interception and use of his
oral communications pursuant to M.G.L. c. 272, § 99(Q).

## COUNT X: Violations of M.G.L. c. 272, § 99 *et seq.*

*(Against Defendants Kyle Newell, Samantha Church, James Hickey, Town of West Tisbury,*
*Jennifer Rand, Richard Knabel, Jeffrey Manter, Cynthia Mitchell, and Ronald Rappaport)*

173.   The allegations set forth in Paragraphs 1 to 98 of this complaint are realleged and
incorporated here as if fully set forth.

174.   Defendant Kyle Newell used his cell phone to secretly record the plaintiff's oral
communications at the Martha's Vineyard Airport on June 8, 2014 and gave a copy of the
recording to defendants Samantha Church and James Hickey.

175.   Plaintiff was unaware that Newell had used his cell phone to secretly record the
June 8, 2014 incident that Church referenced in her October 27, 2016 email to defendant Jennifer
Rand, until reading the certiorari action's administrative record on or about June 12, 2017.

176.   Newell's secret recording of the plaintiff's oral communications on June 8, 2014
and use of the contents thereof were done in the course of his employment by defendants

Samantha Church and James Hickey.

177.    Church's October 27, 2016 email to Rand, referencing Newell's June 8, 2014 secret recording of the plaintiff's oral communications, was used by defendants Knabel, Manter, Mitchell, and Rand in their proceedings against the plaintiff between August 2, 2016 and January 11, 2017 for alleged violation of West Tisbury's taxi regulations, proceedings which were approved by defendant Rappaport.

178.    The aforementioned unauthorized interception and uses of the plaintiff's oral communications by defendants Newell, Church, Hickey, town of West Tisbury, Rand, Knabel, Manter, Mitchell and Rappaport were done in violation of M.G.L. c. 272, § 99 *et seq.*

179.    As a result of the unauthorized interception and uses of the plaintiff's oral communications by the defendants named in this Count, the plaintiff was irreparably injured in his profession, suffered severe financial losses, suffered great mental anguish and emotional distress, was exposed to hatred, ridicule, and contempt, and his reputation was irreparably injured in the community both local and global.

180.    Plaintiff seeks redress for those defendants' unauthorized interception and use of his oral communications pursuant to M.G.L. c. 272, § 99(Q).

## COUNT XI: Violation of M.G.L. c. 268A, § 20

*(Against Defendants Town of West Tisbury and Jeffrey Manter)*

181.    The allegations set forth in Paragraphs 1 to 125 of this complaint are realleged and incorporated here as if fully set forth.

182.    In addition to the specific violation of M.G.L. c. 268A, § 20 by defendant Jeffrey Manter alleged above, Manter has, throughout his many tenures as a West Tisbury selectman, discussed, acted, and voted on taxi matters without a single abstention, mostly to the plaintiff's detriment.

183.    As the town of West Tisbury's taxi regulations divide responsibilities between the board of selectmen and the police department, most—if not all—taxi matters are under the purview of the West Tisbury police department by which Manter is employed, making most—if not all—participation in taxi matters by him as a West Tisbury selectman a violation of M.G.L. c. 268A, § 20 ("no such selectman may vote or act on any matter which is within the purview of the agency by which he is employed or over which he has official responsibility").

184.    Plaintiff seeks redress pursuant to M.G.L. c. 268A, § 21.

## COUNT XII: Defamation

*(Against Defendants Samantha Church, James Hickey, Kyle Newell, Joseph Noel, Vineyard Gazette, LLC, Heather Hamacek, MV Times Corporation, and Edith Prescott)*

185.    The allegations set forth in Paragraphs 1 to 98 of this complaint are realleged and incorporated here as if fully set forth.

186.    Defendant Kyle Newell's allegation, in his August 1, 2016 written complaint, that the plaintiff had swapped cabs out of line, was false and published with actual malice towards the plaintiff to numerous third parties, injured the plaintiff in his profession, and was unprivileged.

187.    Newell's allegation, in his August 1, 2016 written complaint, that the plaintiff had used profanity and an ethnic slur, although true, was published with actual malice towards the plaintiff to numerous third parties, injured the plaintiff in his profession, and was unprivileged.

188.    Newell's testimony at the January 11, 2017 hearing, conflating his private grudges against the plaintiff with the plaintiff's fitness in his profession ("I'm kind of at a loss for words because it was so long ago and I still think about it to this day. Just like … such a nasty thing. For someone to be an ambassador to the island—like, he [Baldwin] works for the airport. These people, these tourists, they get off the plane, and they're [taxi drivers] the first person that they see."), was slander.

189.    At the time of Newell's August 1, 2016 complaint, the plaintiff enjoyed a good reputation with customers and even most competitors, had over the course of ten years risen in Martha's Vineyard's taxi business from driver to manager to owner of his own company, had amassed many distinguished clients, both private and business, all without a single complaint against him being adjudicated by the police or the selectmen under West Tisbury's taxi regulations.

190.    The January 12, 2017 *Vineyard Gazette* website article republishing Newell's defamatory allegations against the plaintiff, was in general neither accurate nor fair, especially as no part of the plaintiff's side of the story was investigated, reported, or solicited by the defendant reporter, Heather Hamacek, or the publisher, defendant Vineyard Gazette, LLC.

191.    The January 18, 2017 *MV Times* website article, and January 19, 2017 print edition of the same, republishing Newell's defamatory allegations against the plaintiff ("Prescott's article"), were in general neither accurate nor fair, especially as no part of the plaintiff's side of the story was investigated, reported, or solicited by the defendant reporter, Edith Prescott, or the publisher, defendant MV Times Corporation.

192.    The subheadline of Prescott's article, "Alpha Taxi owner Benoit Baldwin will miss two weeks driving next summer for his verbal assault of Kyle Newall [sic]," inaccurately implied the West Tisbury selectmen made a clear verbal or written decision on the record to that effect, when they most assiduously did not.

193.    Prescott's article printed Newell's "ambassador" slander: "'I'm kind of at a loss for words,' Mr. Newall [sic] said. 'Such a nasty thing. For someone to be an ambassador to the island —it shocked me.'"

194.    Newell's aforementioned libel and slander was made in course of his employment, or as a result of his employment, as a taxi driver by defendants Samantha Church and James

Hickey.

195.    Defendant Joseph Noel disclosed, with actual malice, defamatory facts about the
plaintiff on Facebook, in the Islanders Talk... group on or about January 20, 2017.

196.    As a result of the aforementioned defamatory conduct by the defendants named in
this Count, the plaintiff was irreparably injured in his profession, suffered severe financial losses,
suffered great mental anguish and emotional distress, was exposed to hatred, ridicule, and
contempt, and his reputation was irreparably injured in the community both local and global.

### PRAYER FOR RELIEF

WHEREFORE, the plaintiff prays that this Honorable Court:

A.    On Counts I, II, III, IV, V, VI, IX, X and XII, award the plaintiff, as permitted by
law, compensatory damages, punitive damages,  prejudgment interest, and court costs.

B.    On Counts IX and X, order the deletion or destruction of any documents, files, or
data being interceptions of the plaintiff's oral communications, or which used the contents
thereof, from any information storage and retrieval systems under the control of the defendants.

C.    On Count VII, issue declaratory judgment as to the constitutionality of West
Tisbury Taxi Regulation 6.4, both on its face and as applied to the plaintiff, and issue a
temporary or permanent injunction against its enforcement as may be necessary and just.

D.    On Count VIII, issue declaratory judgment as to the constitutionality of the
statutes and regulations referenced therein, and others to which the plaintiff may discover he is or
may be subject, which are or which resemble hate crime, "hate speech," or group libel laws, and
issue a temporary or permanent injunction against their enforcement as may be necessary and
just.

E.    On Count XI, issue declaratory judgment as to whether official acts and votes on
taxi matters by a West Tisbury selectman who is at the same time a West Tisbury police officer

were and are done in violation of M.G.L. c. 268A, § 20, and issue relief pursuant to M.G.L. c.
268A, § 21 as may be necessary and just.

    F.    Award the plaintiff such other relief as the Court deems just and proper.


Dated: <u>August 14, 2019</u>

                                        Respectfully submitted,

                                        By the plaintiff,

                                        *Benoit Baldwin* , *pro se*
                                        Benoit Baldwin
                                        455 State Road
                                        Unit 10, PMB 101
                                        Vineyard Haven, MA 02568
                                        (508) 939-3383
                                        bpb@hush.com


## VERIFICATION

    I, Benoit Baldwin, plaintiff in this action, state under the pains and penalties of perjury
that I have read the foregoing Verified Complaint and know the contents thereof and that the
same are true of my own knowledge except as to the matters therein stated to be alleged on
information and belief, and as to these matters I believe them to be true.

Signed under the pains and penalties of perjury, this __14th__ day of __August__ , 20 _19_ .


## STATEMENT AND SEAL OF NOTARY PUBLIC

On this _14_ day of _August_ , 20 _19_ , before me, the undersigned notary public,
personally appeared _Benoit Baldwin_ , whose identity is known to me by
personal knowledge to be the person whose name is signed on the preceding document, who signed the
preceding document in my presence, and who acknowledged to me that they signed the preceding
document voluntarily for its stated purpose.


SIGNATURE OF NOTARY PUBLIC

JONATHAN A. CRISTEA
Notary Public
COMMONWEALTH OF MASSACHUSETTS
My Commission Expires
March 7, 2025





JONATHAN A. CRISTEA
Notary Public
COMMONWEALTH OF MASSACHUSETTS
My Commission Expires
October 1, 2021