UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

BENOIT BALDWIN,
     Plaintiff,

v.                          CIVIL ACTION NO. 1:19-11747-PBS

TOWN OF WEST TISBURY,
RICHARD KNABEL,
JEFFREY MANTER,
CYNTHIA MITCHELL,
JENNIFER RAND,
DANIEL ROSSI,
and
GARRISON VIERA,
*individually and in their official capacities*,
*et al.*,
     Defendants.

REPORT AND RECOMMENDATION ON MOTION TO DISMISS BY RICHARD KNABEL,
JEFFREY MANTER, CYNTHIA MITCHELL, JENNIFER RAND, DANIEL ROSSI, TOWN
OF WEST TISBURY, GARRISON VIERA (#21) & MOTION TO DISMISS FOR FAILURE
TO STATE A CLAIM BY DANIEL ROSSI (#31).

I. Introduction.

This action arose out of an argument between plaintiff, Benoit Baldwin, and defendant,

Kyle Newell, that took place at the Martha's Vineyard Airport on July 22, 2016. (#1 ¶ 1.) On

August 14, 2019, plaintiff, proceeding pro se, filed a complaint against Newell, the Town of West

Tisbury (the Town), Dukes County (the County), as the owner and operator of the airport, and the

following individuals: Town Selectmen Richard Knabel, Jeffrey Manter, and Cynthia Mitchell;

Town Administrator Jennifer Rand; Town Police Chief Daniel Rossi; and Town Police Officer

Garrison Viera (the municipal defendants); Town Counsel Ronald Rappaport; Airport Assistant

Manager Geoffrey Freeman; and taxicab driver Joseph Noel. *Id.* ¶¶ 4–17. The *Vineyard Gazette,*

LLC, *Gazette* reporter Heather Hamacek, the *MV Times* Corporation (the *Times*), and *Times* reporter Edith Prescott were also named as defendants. *Id.* ¶¶ 18–21.[1]

Plaintiff alleges the following claims against the municipal defendants and the Town, pursuant to 42 U.S.C. § 1983: deprivation of freedom of speech (count I), *id.* ¶¶ 99–103; unreasonable search and seizure (count II), *id.* ¶¶ 104–06; deprivation of the right to procedural due process (count III), *id.* ¶¶ 107–25; deprivation of the right to substantive due process (count IV), *id.* ¶¶ 126–28; and deprivation of the right to equal protection (count V), *id.* ¶¶ 129–35. Plaintiff also alleges that the municipal defendants engaged in a conspiracy with Freeman and Rappaport to deprive him of his constitutional rights pursuant to 42 U.S.C. § 1985(3) (count VI), *id.* ¶¶ 136–41; that Town Taxi Regulation 6.4 is unconstitutionally vague and overbroad under both the Federal Constitution and the Massachusetts Declaration of Rights (count VII), *id.* ¶¶ 142–44; that the municipal defendants and the Town violated the Wiretap Statute, Mass. Gen. Laws, ch. 272, § 99 *et seq.* (counts IX and X), *id.* ¶¶ 154–80; and that Manter and the Town violated Mass. Gen. Laws ch. 268A, § 20 (count XI), *id.* ¶¶ 181–84.[2]

On November 13, 2019, the municipal defendants and the Town filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6). (#21.) The motion has been fully

---

[1] Two other defendants, Samantha Church and James Hickey, who owned the taxicab company for which defendant Newell drove, *see* #1 ¶¶ 14–16, were dismissed from the action on January 27, 2020. (#54.) Other defendants filed motions to dismiss (##27, 29, 34, 39), which are addressed in separate reports and recommendations.

[2] Plaintiff further claims that the municipal defendants and the Town violated his right to privacy and to be secure from unreasonable searches and seizures (count II), *id.* ¶ 105, deprived him of his liberty and property without due process of the law (count III), *id.* ¶ 124, and violated his right to equal protection of the law (count V), *id.* ¶ 134, under the Massachusetts Declaration of Rights; and that the municipal defendants conspired to violate his constitutional rights under the Massachusetts Declaration of Rights (count VI), *id.* ¶ 138.

briefed (##22, 51) and is ready for disposition. On November 18, 2019, Rossi filed a separate motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), which is also fully briefed. (## 32, 51.) The court will address both motions here.

For the reasons set out below, the court recommends that the municipal defendants and the Town's motion to dismiss be granted pursuant to Fed. R. Civ. P. 12(b)(6).

II. <u>Facts</u>.

The following facts are taken from plaintiff's complaint (#1) unless otherwise indicated. Plaintiff was a taxicab driver and co-owner of a taxicab company called Alpha Taxi, permitted and licensed by the Town. *Id.* ¶¶ 3, 25. On July 22, 2016, plaintiff and defendant Newell, a driver for a different taxicab company, got into an argument outside the Martha's Vineyard Airport, after Newell wrongfully accused plaintiff "of swapping cabs outside the airport taxi line[.]" *Id.* ¶¶ 1, 26.[3] Plaintiff, who had been "subjected to years of similar harassment by Newell[,]" admittedly responded to Newell's accusation "with profanity and an ethnic slur." *Id.* ¶ 1. Shortly after the argument, Officer Leomar DeOliveira, a Town police officer on duty at the airport that day, interviewed plaintiff and Newell, and determined that Newell's allegation that plaintiff "had swapped cabs outside the airport taxi line had no basis in fact." *Id.* ¶ 33. Officer DeOliveira did not take any further action or write an incident report. *Id.*

Although plaintiff was not aware of it, Newell, using his cell phone, recorded the incident with plaintiff. *Id.* ¶ 1.[4] On August 1, 2016, Newell submitted a written complaint to Freeman,

---

[3] Apparently, it is a violation of airport regulations to remove a taxicab from a line of waiting taxicabs and put another taxicab in its place. *See* #35-1 at 7.

[4] Plaintiff filed an application for a criminal complaint against Newell in the Edgartown District Court on September 16, 2016, alleging that Newell violated the Massachusetts Wiretap Statute, Mass. Gen. Laws ch. 272, § 99 *et seq.* (#1 ¶ 62.) The application was denied on September 30, 2016. *Id.*

Case 1:19-cv-11747-PBS   Document 62   Filed 08/26/20   Page 4 of 28

which, according to plaintiff, contained a "verbatim transcription" of the recording. *Id.* ¶¶ 1, 35, 37. While plaintiff admits that he used "profanity and an ethnic slur" while speaking to Newell, *id.* ¶ 1, Newell's written complaint gives more details. Newell relates that when he approached plaintiff and asked him if he had swapped the taxicab from the line, plaintiff answered, "What did you say, you k**e?" (#35-1 at 10.) When Newell said, "Excuse me?" plaintiff got out of his taxicab and asked Newell again, "What did you say, you f*****g k**e?" *Id*. As the two men continued to speak, plaintiff said to Newell, "What did you see, k**e?" and told him, "You saw nothing, k**e." *Id*. at 11.[5]

After receiving the complaint from Newell, Freeman called Town Police Chief Rossi. (#1 ¶ 39.) Rossi dispatched another defendant, Officer Viera, to the airport, and Viera met with Freeman and Newell. *Id.* Viera then prepared an incident report, which was approved by defendant

---

[5] The First Circuit has repeatedly cautioned that "[o]rdinarily, a court may not consider any documents that are outside of the complaint, or not expressly incorporated therein . . . ." *Graf v. Hospitality Mut. Ins. Co*., 754 F.3d 74, 76 (1st Cir. 2014) (internal citations and quotation marks omitted). That said, "there is a narrow swatch of materials outside the complaint itself that may be considered on a motion to dismiss for failure to state a claim." *Ríos-Campbell v. U.S. Dep't. of Commerce*, 927 F.3d 21, 25 n.2 (1st Cir. 2019). "[W]hen . . . a complaint's factual allegations are expressly linked to – and admittedly dependent upon – a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6)." *Trans-Spec Truck Serv., Inc. v. Caterpillar Inc*., 524 F.3d 315, 321 (1st Cir. 2008) (internal citations and quotation marks omitted), *cert. denied*, 555 U.S. 995 (2008); *Yacubian v. U.S*., 750 F.3d 100, 102 (1st Cir. 2014); *United Auto., Aerospace, Agric. Implement Workers of Am. Intern. Union v. Fortuno*, 633 F.3d 37, 39 (1st Cir. 2011). Newell's written complaint falls within this exception and may properly be considered here. Plaintiff refers to it in his complaint and states that it contains a "verbatim transcription" of the argument, taken from the cell phone recording of the incident, which the court interprets to mean that plaintiff does not dispute that Newell's complaint, insofar as it describes the argument between the two men, is an accurate record of what transpired. (#1 ¶¶ 1, 37.) *See*, e.g., *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993) (citations omitted) ("[C]ourts have made narrow exceptions for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to the plaintiffs' claim; or for documents sufficiently referred to in the complaint.").

Manter, who was a Town police sergeant and a member of the Town Board of Selectmen (the Board). *Id.* ¶¶ 40–41. After reviewing Viera's incident report and Newell's complaint, the Board, comprised of Manter and defendants Knabel and Mitchell, voted to send plaintiff a letter of inquiry, which stated that "[t]he Board of Selectmen have been provided with a copy of an incident report filed with the [Town] Police Department . . . regarding an incident that reportedly took place on July 22, 2016 at the MV Airport." *Id.* ¶¶ 43, 45. The letter "quoted Section 6.4 and 6.8 of West Tisbury's taxi regulations, which—taken with the letter's contents as a whole—placed [plaintiff] in fear of having his permit to drive a taxi revoked or suspended." *Id.* ¶ 46.[6]

Because the letter did not contain details about the incident, plaintiff "had no idea to what incident the Board's letter referred." *Id.* ¶ 49. He therefore went to the police station on August 19, 2016, where he asked Manter for a copy of the incident report mentioned in the letter. *Id.* ¶¶ 50–51. Manter told him he could get a copy of the report from Rand, the Town Administrator, but because plaintiff "could see no good reason why he was being forced to obtain a police report from a place other than [the] police department that issued it," he never asked Rand for the report. *Id.* ¶ 55. On or about September 6, 2016, Rossi mailed him a copy of the report. *Id.* ¶ 58. When plaintiff read the report, he learned for the first time that Newell had recorded the incident. *Id.* ¶¶ 59–60.

Plaintiff admittedly did not respond to the Board's original letter of inquiry, or a second letter of inquiry, sent on or about October 20, 2016. *Id.* ¶¶ 44, 64.

---

[6] Section 6.4 of the Town's Taxi Regulations states: "Taxicab operators shall conduct themselves in a courteous and professional manner at all times. No operator may interfere with the business transactions of another taxicab once the fare is on board." (#22-4 at 8.) Section 6.8 of the Regulations states: "If at any time during the term of a permit, the Board or the Police Department becomes aware that the permit holder no longer complies with these regulations . . . [,] there shall be a hearing before the Board to determine if the permit shall be revoked or suspended." *Id.*

In December 2016 and early January 2017, Rand sent plaintiff an email and an additional letter, informing him that a hearing on Newell's complaint would be held before the Board on January 11, 2017. *Id.* ¶¶ 69–70. Although he received both communications informing him about the hearing, plaintiff did not attend, and after the hearing, the Board voted to suspend plaintiff's taxi-driving permit for two weeks in July and August 2017, based on plaintiff's violation of the Town's Taxi Regulation 6.4, which states that "taxicab operators shall conduct themselves in a courteous and professional manner at all times." *Id.* ¶¶ 1, 71, 76, 143.

Following the Board's decision, on February 6, 2017, plaintiff confronted Rossi and asked why the police had forwarded Newell's complaint to the Board. *Id.* ¶ 87. Rossi responded that Newell had requested that they do so, and that "taxi drivers' behavior came under the authority of the [Board] to regulate." *Id.* Rossi also "claimed that Newell's complaint had initially been investigated as a 'hate crime,' but it was later determined the incident did not rise to that level." *Id.* ¶ 88.

On March 13, 2017, plaintiff filed "an action in the nature of certiorari" pursuant to Mass. Gen. Laws ch. 249, § 4, in the Dukes County Superior Court, seeking review of the Board's decision to suspend his taxi permit. *Id.* ¶ 91. During the proceedings, plaintiff filed a motion to stay execution of the Board's suspension of his permit, which was denied. *Id.* ¶¶ 97–98. Plaintiff's suspension was carried out as ordered by the Board between July 22, 2017 and August 4, 2017. *Id.* ¶ 98. Plaintiff voluntarily dismissed his certiorari action to review the Board's decision suspending his taxi permit in February 2018. (#35-2 at 4.)

### III. <u>Legal Standard</u>.

The Town and the municipal defendants move to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6). A defendant may move to dismiss an action based on a lack

of federal subject-matter jurisdiction pursuant to Rule 12(b)(1). "'Because federal courts are courts of limited jurisdiction, federal jurisdiction is never presumed.' The party asserting jurisdiction has the burden of demonstrating the existence of federal jurisdiction." *Fabrica de Muebles J.J. Alvarez, Incorporado v. Inversiones Mendoza, Inc.*, 682 F.3d 26, 32 (1st Cir. 2012) (quoting *Viqueira v. First Bank*, 140 F.3d 12, 16 (1st Cir.1998)). Once a defendant challenges the jurisdictional basis for a claim under Rule 12(b)(1), the plaintiff bears the burden of proving jurisdiction. *Thomson v. Gaskill*, 315 U.S. 442, 446 (1942); *see also Justiniano v. Soc. Sec. Admin.*, 876 F.3d 14, 21 (1st Cir. 2017).

In ruling on a motion to dismiss for lack of jurisdiction, the court must "credit the plaintiff's well-pled factual allegations and draw all reasonable inferences in the plaintiff's favor." *Sanchez ex rel. D.R.-S. v. U.S.*, 671 F.3d 86, 92 (1st Cir. 2012) (quoting *Merlonghi v. U.S.*, 620 F.3d 50, 54 (1st Cir. 2010)). The "court may also 'consider whatever evidence has been submitted, such as the depositions and exhibits submitted.'" *Merlonghi*, 620 F.3d at 54 (1st Cir. 2010) (quoting *Aversa v. U.S.*, 99 F.3d 1200, 1210 (1st Cir. 1996)); *Carroll v. U.S.*, 661 F.3d 87, 94 (1st Cir. 2011) ("In evaluating a motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction, we construe plaintiffs' complaint liberally and ordinarily may consider whatever evidence has been submitted, such as . . . depositions and exhibits.").

A Rule 12(b)(6) motion to dismiss challenges a party's complaint for failing to state a claim. In deciding such a motion, a court must "treat all well-pleaded facts in the complaint as true and draw all reasonable inferences in favor of the plaintiff." *In re Fin. Oversight & Mgmt. Bd. for P.R.*, 919 F.3d 121, 127 (1st Cir. 2019) (citing *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 7 (1st Cir. 2011)). When considering a motion to dismiss, a court "may augment these facts and inferences with data points gleaned from documents incorporated by reference into the complaint,

matters of public record, and facts susceptible to judicial notice." *A.G. ex rel. Maddox v. Elsevier, Inc.*, 732 F.3d 77, 80 (1st Cir. 2013) (citing *Haley v. City of Bos.*, 657 F.3d 39, 46 (1st Cir. 2011)).

To survive a motion to dismiss under Rule 12(b)(6), the plaintiff must provide "enough facts to state a claim to relief that is plausible on its face." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The "obligation to provide the grounds of [the plaintiff's] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (quotation marks and alteration omitted). The "[f]actual allegations must be enough to raise a right to relief above the speculative level," and to cross the "line from conceivable to plausible." *Id.* at 555, 570.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). However, the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id*. at 678 (quoting *Twombly*, 550 U.S. at 555). Simply put, the court should assume that well-pleaded facts are genuine and then determine whether such facts state a plausible claim for relief. *Id.* at 679.

"Where, as here, the plaintiff is proceeding pro se, the court must construe his allegations liberally." *Rick v. Profit Mgmt. Assocs.*, 241 F. Supp.3d 215, 218 (D. Mass. 2017) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). "However . . . , even a pro se plaintiff is required to set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *Strahan v. AT&T Mobility LLC*, 270 F. Supp. 3d 535, 540 (D. Mass. 2017) (internal citations and quotation marks omitted).

IV.  Analysis.

A. Plaintiff's Claims are Not Moot.

Defendants argue that plaintiff's claims are moot because plaintiff's two-week suspension period has "long since run," and plaintiff and his company "no longer hold a license to operate a taxi for unrelated reasons." (#22 at 2, 8–10.) Under Article III of the United States Constitution, federal courts have jurisdiction to decide only actual cases or controversies, *see* U.S. Const. Art. III, so if a plaintiff's claims are moot, they must be dismissed. *See Iron Arrow Honor Soc'y v. Heckler*, 464 U.S. 67, 70 (1983) (citations omitted) (holding that to satisfy the case or controversy requirement, plaintiff "must have suffered some actual injury that can be redressed by a favorable judicial decision") Plaintiff, however, is not seeking to overturn the 2017 suspension of his permit to drive a taxi. He primarily seeks compensatory and punitive damages for alleged violations of his constitutional rights. *See* #1 at 30–31. "A claim is moot only if no relief is available." *Kuperman v. Wrenn*, 645 F.3d 69, 73 (1st Cir. 2011) (holding that where former inmate could obtain nominal and punitive damages under § 1983, claims were not moot, even though he was no longer imprisoned: "Our question is whether [plaintiff] can obtain some relief, and he can. Therefore, his claims are not moot."). Because plaintiff here is seeking damages, his claims are not moot.

B. The Doctrine of Claim Preclusion Does Not Bar Plaintiff's Claims.

The Town and the municipal defendants argue that plaintiff's claims should be dismissed because plaintiff's certiorari action in state court was previously dismissed, and "[p]laintiff is precluded from re-litigating the same issue here based on the doctrine of res judicata." (#22 at 10 n.3.)

The effect that the Dukes County Superior Court action has on this case is determined according to Massachusetts law. *See Torromeo v. Town of Fremont*, 438 F.3d 113, 115–16 (1st

Cir. 2006); *see also* 28 U.S.C. § 1738. In Massachusetts, claim preclusion, sometimes referred to as res judicata, "makes a valid, final judgment conclusive on the parties and their privies, and prevents relitigation of all matters that were or could have been adjudicated in the action." *Kobrin v. Bd. of Registration in Med.*, 444 Mass. 837, 843 (2005) (internal citations and quotation marks omitted); *Bagley v. Moxley*, 407 Mass. 633, 636 (1990). The three elements of claim preclusion are: 1) the prior action must have produced a final judgment on the merits; 2) the parties to the prior and present actions must either be identical or in privity; and 3) the causes of action must be the same. *Kobrin,* 444 Mass. at 843–44 (citation omitted); *see also DaLuz v. Dep't of Corr.*, 434 Mass. 40, 45 (2001); *Bui v. Mass.*, 62 Mass. App. Ct. 553, 561 (2004). The moving party bears the burden of establishing each of these factors. *Sarvis v. Bos. Safe Deposit & Tr. Co.*, 47 Mass. App. Ct. 86, 99 (1999).

Plaintiff voluntarily dismissed his certiorari action in Dukes County Superior Court in February 2018. *See* #22-2 at 4. The docket reads: "ORDER: of Dismissal Allowed after the Request of the Plaintiff to Dismiss in Open Court[.]" *Id.* Massachusetts Rule of Civil Procedure 41(b) states that "an action shall not be dismissed at the plaintiff's instance save upon order of the court and upon such terms and conditions as the court deems proper." The Rule provides, "Unless otherwise specified in the order, a dismissal under this paragraph is without prejudice." Mass. R. Civ. P. 41(b). There is no indication that the order dismissing the case was with prejudice. Because there was no final judgment on the merits in the Dukes County Superior Court action, the doctrine of claim preclusion does not prevent plaintiff from prosecuting his claims here.

C. § 1983 Claims against the Municipal Defendants (Counts I, II, III, IV, and V).

Under long-standing Supreme Court precedent, government officials who are sued in their individual capacities[7] are immune from damages claims "under § 1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was clearly established at the time." *D.C. v. Wesby*, 138 S. Ct. 577, 589 (2018) (internal quotations omitted); *see also Penate v. Hanchett*, 944 F.3d 358, 366 (1st Cir. 2019); *Eves v. LePage*, 927 F.3d 575, 582–83 (1st Cir. 2019). Qualified immunity is "aimed at providing government officials . . . a modicum of protection from civil damages liability for actions taken under color of state law." *Gray v. Cummings*, 917 F.3d 1, 9 (1st Cir. 2019) (citations omitted). "This protection attaches 'to all but the plainly incompetent or those who knowingly violate the law.'" *Id.* at 9–10 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). To survive a motion to dismiss against an official entitled to the defense of qualified immunity, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. "A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Wilbur v. Curtis*, 872 F.3d 15, 21 (1st Cir. 2017) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)).

As explained below, because plaintiff's complaint does not sufficiently allege that any of the municipal defendants violated any of his federal constitutional rights, this court recommends that these claims against the municipal defendants be dismissed for failing to state a claim under Rule 12(b)(6).

---

[7] The court addresses only the claims against the municipal defendants in their individual capacities here. "A damages suit against an official in an official capacity is tantamount to a suit against the entity of which the official is an agent[.]" *Burrell v. Hampshire Cty.*, 307 F.3d 1, 7 (1st Cir. 2002). Plaintiff's claims against the Town are discussed *infra*.

1. Count I: 42 U.S.C. § 1983—Deprivation of Freedom of Speech by the Municipal Defendants.

Plaintiff claims that the municipal defendants violated his First Amendment rights by subjecting him to the police investigation and the hearing in front of the Board, resulting in his suspension "[o]n the basis of [his] speech as secretly recorded by defendant Newell . . . ." (#1 ¶ 100.)

"[I]t is well-settled that only those who participated in conduct that deprived plaintiffs of their constitutional rights can be held liable" under § 1983. *Slavas v. Town of Monroe*, No. 16-cv-30034-KAR, 2017 WL 959575, at *12 (D. Mass. Mar. 10, 2017) (citing *Velez-Rivera v. Agosto-Alicea*, 437 F.3d 145, 156 (1st Cir. 2006)). Plaintiff's allegations against Rossi are that Rossi dispatched Officer Viera to the airport following his conversation with Freeman, sent Officer Viera's police report to plaintiff's home, and discussed Newell's complaint with plaintiff following the Board's decision. (#1 ¶¶ 39, 58–59, 87–88.) Plaintiff's allegations against Viera are that he was dispatched to the airport, where he spoke to Newell and prepared a police report that was eventually sent to the Board. *Id.* ¶¶ 39–42. Plaintiff's allegations against Rand are that she received Viera's report, sent the letters of inquiry from the Board to plaintiff, and sent plaintiff a letter and email informing him about his hearing in front of the Board. *Id.* ¶¶ 42, 64, 69–70. These facts do not support a claim that Rossi, Viera, or Rand had any involvement with violating plaintiff's First Amendment rights.

Plaintiff's claims against the Board members also fail. Plaintiff admits the Board suspended him for violating Section 6.4 of the Town's Taxi Regulations, which requires taxicab operators to "conduct themselves in a courteous and professional manner at all times." *Id.* ¶¶ 1, 76, 100, 143. Plaintiff's complaint alleges that at the hearing, the Board considered Newell's written complaint, which stated that plaintiff, while working as a taxicab driver at the airport, engaged in a public

argument with Newell, in the course of which he repeatedly called Newell a highly offensive antisemitic slur, and swore at him. *Id.* ¶¶ 1, 32, 73. Plaintiff admits that he engaged in this unprofessional and rude behavior, *id.* ¶ 32, which was obviously in violation of the rule. Newell's complaint also related that plaintiff had swapped cars in the taxi line, another violation of airport rules. (#35-1 at 10.) While plaintiff denied that he swapped cars, he admittedly failed to attend the hearing to contest Newell's allegations against him. (#1 ¶¶ 1, 71.)

Plaintiff states that the "essence" of his "chief complaint in this action is that he was subjected to a de facto 'hate speech' prosecution by local government authorities." *Id.* ¶ 147. While plaintiff is correct that the government cannot ban offensive speech, *see Matal v. Tam*, 137 S. Ct. 1744, 1764 (2017) (citations omitted), the government certainly may make and enforce rules governing the conduct of taxicab drivers who are licensed by the government, and plaintiff makes no argument to the contrary. Mass. Gen. Laws ch. 40, §22 provides that a city or town may regulate "carriages and vehicles used therein[.]" The Town's Taxi Regulations, promulgated under this statute, provide that the Town "reserves the right to make decisions relative to licensing consistent with the safety and convenience of the public, and the best interests of the Town of West Tisbury; the coordination of public transportation; and the provision of services necessary to maintain a tourism-based economy." (#22-4 at 2.) Section 6.8 of the regulations provide that "[if] at any time during the term of a permit, the Board or the Police Department becomes aware that the permit holder no longer complies with these regulations . . . [,] a hearing before the board will be held as soon as possible . . . to determine if the permit shall be revoked or suspended." *Id.* at 8–9. Plaintiff was sanctioned by the Board, not for expressing his views as a "bigot," as he refers to himself, (#1 ¶ 138), but for clearly violating a legitimate regulation concerning the conduct of taxicab drivers while on the job, a regulation that the Board had the authority to enforce. There was no violation

of plaintiff's First Amendment rights, and this count should be dismissed against the municipal defendants.

2. Count II: 42 U.S.C. § 1983—Unreasonable Search and Seizure, Violation of Privacy by the Municipal Defendants.

Plaintiff claims that the municipal defendants "searched and seized [his speech, in the form of Newell's recording] in violation of [his] rights to privacy and to be secure from unreasonable searches and seizures guaranteed by the Fourth and Fourteenth Amendments . . . and [a]rticle 14 of the Massachusetts Declaration of Rights." (#1 ¶ 105.)

"The Fourth Amendment protection against unreasonable searches and seizures does not apply to searches by a private citizen unless he was acting as a government agent when conducting the search." *U.S. v. Silva*, 502 F. Supp.2d 143, 146 (D. Mass. 2007) (citing *Skinner v. Ry. Labor Execs.' Ass'n*, 489 U.S. 602, 614 (1989)); *see also Commonwealth v. Almonor*, 482 Mass. 35, 40 (2019) (citation omitted) (only government action constitutes a "search" where Fourth Amendment and article 14 protections apply). Even if Newell's recording of the incident was unlawful, private wrongdoing "does not deprive the government of the right to use the evidence it [otherwise] acquired lawfully." *Silva*, 502 F. Supp.2d at 146 (quoting *Walter v. United States*, 447 U.S. 48, 656 (1980)).

Here, there was no involvement by any government agent in Newell's recording of his encounter with plaintiff. Thus, plaintiff's rights were not violated under either the Fourth Amendment or article 14. Count II should be dismissed against the municipal defendants.

3. Count III: 42 U.S.C. § 1983—Deprivation of the Right to Procedural Due Process by the Municipal Defendants.

Plaintiff alleges that the municipal defendants violated his procedural due process rights under the Fifth and Fourteenth Amendments and articles 1, 10, and 12 of the Massachusetts

Declaration of Rights by allowing Newell to submit his complaint letter to the Town police ten days after the alleged incident, in violation of Town regulations (that required complaints to be filed within seven days "unless extenuating circumstances do not allow for this."). (#1 ¶¶ 108–10.) Other claimed violations of his due process rights include: allowing Newell's unsworn complaint, containing the transcript of the cell phone recording, to be used at the hearing, although it was allegedly inadmissible; allowing an email from Rand containing information about another earlier "interception of the plaintiff's oral communications" to be used at the hearing; failing to give plaintiff adequate notice of the hearing or of his alleged offense; obstructing plaintiff's discovery of evidence; depriving plaintiff of his right to confront accusers and witnesses; proceeding with conflicts of interest;[8] and failing to provide adequate notice of the Board's final decision to suspend his taxi license. (#1 ¶¶ 111–20, 124.) Plaintiff further alleges that Manter refused to provide him with defendant Viera's police report referenced in the Board's letter of inquiry, "thereby obstructing [his] attempt to discover the nature of the offense [against him], and the evidence in support thereof." *Id.* ¶ 115.

In order to state a claim for a procedural due process violation, plaintiff "must establish that [he] enjoyed a protected property interest [in his taxi permit] and that [the municipal defendants] acted under the color of state law in depriving him of this interest without

---

[8] Plaintiff alleges that "[a]t the time Newell submitted his complaint," the municipal defendants were also defendants in an unrelated case he had filed in this court (No. 16-cv-10736-ADB), "alleging [they] had violated [plaintiff's] rights to due process and equal protection in failing to regulate Uber and Lyft." (#1 ¶¶ 119–20.) Because plaintiff fails to allege how this "conflict of interest" affected their handling of Newell's complaint, these unsupported allegations will not be discussed further.

    Plaintiff alleges that Manter had an additional conflict of interest because he approved the police report in his capacity as a police sergeant and then "went on to act on [the] report as a member of" the Board, in violation of Mass. Gen. Laws. ch. 268A, § 20. *See id.* ¶¶ 116, 118, 124. This allegation against Manter will be discussed *infra.*

constitutionally adequate process." *S. Commons Condo. Ass'n v. City of Springfield*, 967 F. Supp.2d 457, 463 (D. Mass. 2013) (citing *San Geromico Caribe Project, Inc. v. Acevedo-Vila*, 687 F.3d 465, 478 (1st Cir. 2012), *Gonzalez-Droz v. Gonzalez-Colon*, 660 F.3d 1, 13 (1st Cir. 2011), and *Gallant v. City of Fitchburg*, 739 F. Supp.2d 39, 46 (D. Mass. 2010)). "[A] plaintiff must first have a 'legitimate claim of entitlement' to property . . . , which must stem from 'an independent source such as state law.'" *Caesars Mass. Dev. Co., LLC v. Crosby*, No. 13-13144-NMG, 2014 WL 2468689, at *10 (D. Mass. May 30, 2014) (quoting *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972), and *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005)), *aff'd*, *Caesars Mass. Mgmt. Co., LLC v. Crosby*, 778 F.3d 327 (1st Cir. 2015). If the requirement that plaintiff has a property interest is met, then "[p]rocedural due process, at a minimum, requires that the affected individual must be forewarned and afforded an opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id.* at *13 (quoting *Amsden v. Moran*, 904 F.2d 748, 753 (1st Cir. 1990)).

Plaintiff fails to state a claim against any of the municipal defendants for violation of his procedural due process rights. As set out above with regard to plaintiff's First Amendment claim, defendants Rossi and Viera had nothing to do with the Board's actions disciplining plaintiff. Plaintiff does not allege that Rand was involved with the hearing, apart from her sending plaintiff notices about the Board's inquiry and the date of the hearing. The facts alleged against these defendants do not support a claim that they violated plaintiff's procedural due process rights. *See Velez-Rivera*, 437 F.3d at 145 (holding that plaintiff's §1983 claim against government official for wrongfully terminating contract failed, where plaintiff did not allege "any facts to substantiate his claim that [the government official] was directly involved with his contract termination").

With regard to the remaining municipal defendants, even assuming *arguendo* that plaintiff had a property interest in his permit, plaintiff fails to allege that he was deprived of constitutionally adequate process. The perceived procedural irregularities about which he complains, such Newell's filing his complaint three days late, or Newell's filing an unsworn complaint, are not serious enough to support constitutional claims. "The First Circuit . . . has cautioned that allegations of violations of state law or other regulatory process by state officials 'do not ordinarily rise to the level of constitutional deprivation.'" *S. Commons Condo Ass'n*, 967 F. Supp.2d at 468 (quoting *PFZ Props., Inc. v. Rodriguez*, 928 F.2d 28, 31 (1st Cir. 1991), *cert. dismissed*, 503 U.S. 257 (1992)). "[A] breach of procedural requirements does not create a due process violation unless an individual was denied a fair forum for protecting his state rights." *Gallant*, 738 F. Supp.2d at 46 (quoting *McDarby v. Dinkins*, 907 F.2d 1334, 1337 (2d Cir. 1990)).

None of plaintiff's other allegations salvage his claim. Plaintiff clearly was put on notice, well before the hearing, that his permit was in jeopardy. He admits in his complaint that the Board's first letter of inquiry referenced the July 2016 incident and "quoted Sections 6.4 and 6.8 of [the Town's] taxi regulations, which—taken with the letter's contents as a whole—placed [him] in fear of having his permit to drive a taxi revoked or suspended." (#1 ¶ 46.) He also admits that he obtained copies of the police report and Newell's complaint against him in September 2016, approximately four months before the hearing, so he clearly was aware of the incident to which the Board's letter referred and the nature of the allegations against him well before the hearing. *Id.* ¶¶ 58–60. Despite having received notice of the hearing and understanding what might happen

with regard to his permit as a result of the hearing, plaintiff chose not to attend and confront his accusers and contest any evidence that was presented. *See id.* ¶¶ 69–71.[9]

The fact that plaintiff sought review of the Board's decision to suspend his taxicab permit by filing an action for certiorari in the Dukes County Superior Court pursuant to Mass. Gen. Laws ch. 249, § 4 further erodes his claim that he did not receive a fair hearing. *See PFZ Props., Inc.*, 928 F.3d at 31 (plaintiff's procedural due process rights were not violated when plaintiff could file petition for reconsideration of administrative decision in superior court); *Creative Env'ts v. Estabrook*, 680 F.2d 822, 832 n.9 (1st Cir. 1981) (citations omitted) ("[w]here a state has provided reasonable remedies to rectify a legal error by an administrative body . . . due process has been provided and . . . section 1983 is not a means for litigating the correctness of the state or local administrative decision in a federal forum"), *cert. denied*, 459 U.S. 989 (1982). Count III should be dismissed against the municipal defendants.

4. <u>Count IV: 42 U.S.C. § 1983—Deprivation of the Right to Substantive Due Process by the Municipal Defendants</u>.

Plaintiff alleges that the municipal defendants violated his substantive due process rights by pursuing Newell's claims against him, because they acted "in a manner unjustified by any government interest, in a procedure unauthorized by any law, in violation of federal and Massachusetts wiretap laws, with malice and with shockingly reckless disregard for [his] rights[.]" (#1 ¶ 127.)

---

[9] Plaintiff does not otherwise allege how the Board obstructed his discovery of the evidence, deprived him of his right to confront accusers and witnesses, or failed to provide him adequate notice of the Board's final decision to suspend his taxi permit. Plaintiff had notice of the Board's decision as of March 13, 2017, at the latest, when he filed his certiorari action, several months before his scheduled suspension in July 2017. (#1 ¶ 91.)

In order to bring a claim for a substantive due process violation, a plaintiff must establish that (1) the defendant "violated a right protected by the substantive due process clause and (2) that [d]efendant['s] actions 'shock the conscience.'" *S. Commons Condo Ass'n*, 967 F. Supp.2d at 468 (quoting *Martinez v. Cui*, 608 F.3d 54, 64 (1st Cir. 2010)). Regarding the second prong, the district court explained:

> Although "each determination of whether state conduct shocks the conscience is necessarily fact-specific," the First Circuit has provided some general guidelines. *Cruz-Erazo v. Rivera-Montanez*, 212 F.3d 617, 623 (1st Cir. 2000); *Pagan v. Calderon*, 448 F.3d 16, 32 (1st Cir. 2006). On a basic level, substantive due process protects the individual against "the exercise of power without any reasonable justification in the service of a legitimate government objective." [*Cty. of Sacramento v.*] *Lewis*, 523 U.S. [833, 846 (1998)]. The First Circuit has described substantive due process claims as requiring that the state's conduct be either "physically intrusive or violent" or must "strike at the basic fabric of [a] protected relationship, such as the parent-child relationship." *Cruz-Erazo*, 212 F.3d at 623. The Supreme Court has "rejected the lowest common denominator of customary tort liability as a mark of sufficiently shocking conduct, and [has] held that the Constitution does not guarantee due care on the part of state officials; liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process." *Lewis*, 523 U.S. at 848–[4]9.

*Id.*

Here, plaintiff has not adequately pled that any of the municipal defendants' actions violated his constitutional rights, much less that anything they did to enforce the Town's Taxi Regulations constituted "the exercise of power without any reasonable justification in the service of a legitimate government objective" so that what they did "shock[s] the conscience." *Cty. of Sacramento*, 523 U.S. at 846, 855. Count IV should be dismissed.

5. <u>Count V: 42 U.S.C. § 1983—Deprivation of the Right to Equal Protection by the Municipal Defendants</u>.

Plaintiff further claims that, although he was "similarly situated" to Newell, the municipal defendants, "under the color of law, took selective action against [him] for assumed and alleged violations of law, but not against Newell for his clear violations of federal and Massachusetts

wiretap laws" in violation of both the equal protection clause and articles 1 and 10 of the Massachusetts Declaration of Rights. (#1 ¶¶ 130–31, 134.)

"To establish an equal protection claim [under the Fourteenth Amendment], a plaintiff needs to allege facts showing that "(1) [he], compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" *Davis v. Coakley*, 802 F.3d 128, 132–33 (1st Cir. 2015) (quoting *Rubinovitz v. Rogato*, 60 F.3d 906, 910 (1st Cir. 1995)). "An individual is 'similarly situated' to others for equal protection purposes when 'a prudent person, looking objectively at the incidents, would think them roughly equivalent and the protagonists similarly situated.'" *Id.* at 133 (quoting *Barrington Cove Ltd. P'ship v. R.I. Hous. & Mortg. Fin. Corp.*, 246 F.3d 1, 8 (1st Cir. 2001)). The test for determining whether equal protection has been violated under the Fourteenth Amendment is "the same" as that under the Massachusetts Declaration of Rights. *Commonwealth v. McCormick*, No. 15-P-1506, 2017 WL 3480926, at *4 (Mass. App. Ct. Aug. 15, 2017) (quoting *Commonwealth v. George*, 430 Mass. 276, 280 n.5 (1999)).

The problem with this claim against Rossi, Rand and Viera is that, as the court noted above with regard to plaintiff's First Amendment claim, they had nothing to do with bringing the Board's action against plaintiff or sanctioning him. Nor is the claim adequately pled against the Board members. Plaintiff states in his complaint that he was "similarly situated" to Newell, because he was prosecuted for violating the Town's Taxi Regulations while Newell was not prosecuted for violating the Massachusetts Wiretap Statute. (#1 ¶ 131.) The first problem with this argument is that the Board had no authority to sanction Newell for violating any wiretap law. The second problem is that plaintiff, while on the job, admittedly swore at Newell and repeatedly used an

antisemitic slur when arguing with him in public, and plaintiff makes no claim that Newell did the same to him. What Newell did was record the argument, which resulted in the Board, through no wrongdoing of its own, having an accurate record of precisely what plaintiff did to violate the Town's Taxi Regulations. At any rate, had Newell not recorded the argument, the outcome would have been the same, because the Board could have just asked Newell what happened, and acted on that. Because plaintiff voluntarily absented himself from the hearing, the Board would have heard an uncontested account of what transpired.

In short, plaintiff's claim that he and Newell were "similarly situated" is plainly insupportable. Neither has plaintiff adequately pled that any of the municipal defendants employed selective treatment based on race, religion, or any other impermissible consideration in investigating Newell's claims and presiding over the hearing. Count V against the municipal defendants also fails.

D. § 1983 Claims against the Town (Counts I, II, III, IV, and V).

A municipality "can be found liable under § 1983 only when the municipality itself causes the constitutional violation at issue. Respondeat superior or vicarious liability will not attach under § 1983." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (citing *Monell v. N.Y. City Dep't of Soc. Servs.*, 436 U.S. 658, 694–95 (1978)). "It is only when the execution of the government's policy or custom inflicts the injury that the municipality may be held liable under § 1983." *Id.* (internal citations, quotation marks, and alterations omitted). To establish liability for an unconstitutional municipal custom or policy under § 1983, a plaintiff must prove:

> (1) that the governmental entity's employees engaged in a continuing, widespread, persistent pattern of conduct in violation of the constitutional standard, (2) that the government entity's policymaking officials, after having notice of the misconduct, remained deliberately indifferent to or tacitly authorized continuation of that misconduct, and (3) that the plaintiff was injured by continued misconduct within

the persistent pattern, thus showing that the custom was a moving force behind the
violation of the constitutional standard.

*Jonielunas v. City of Worcester Police Dep't.*, 338 F. Supp.2d 173, 177 (D. Mass. 2004) (citing

*Armstrong v. Lamy*, 938 F. Supp. 1018, 1035–36 (D. Mass. 1996)); *see Nasir v. Town of*

*Foxborough*, 19-cv-11196-DJC, 2020 WL 1027780, at **3–4 (D. Mass. Mar. 3, 2020) (citing

*McElroy v. City of Lowell*, 741 F. Supp.3d 349 (D. Mass. 2010)) ("a single instance of . . .

misconduct cannot give rise to a showing of the requisite policy or custom").

   For the reasons set out above, plaintiff's § 1983 claims against the municipal defendants in

their individual capacities fail. On this basis alone, plaintiff's § 1983 claims against the Town

(counts I, II, III, IV, and V) should be dismissed. *See Rivera v. City of Worcester*, No. 12-40666-

TSH, 2015 WL 685800, at *5 (D. Mass. Feb. 18, 2015) (citing *Evans v. Avery*, 100 F.3d 1033,

1040 (1st Cir. 1996)) (plaintiff could not succeed on any of his municipal liability claims when he

failed to raise a genuine and material factual dispute regarding any constitutional violation by its

police officers); *Calvi v. Knox Cty.*, 470 F.3d 422, 429 (1st Cir. 2006).

E. <u>Count VI : 42 U.S.C. § 1985(3)—Conspiracy for Deprivation of Rights by the Municipal
   Defendants</u>.

   Plaintiff claims that the municipal defendants, along with Freeman, Newell, and Rappaport,

"conspired to deprive" him of his constitutional rights based on his membership to a class of "anti-

Semites" or "bigots" in violation of the First, Fourth, Fifth, and Fourteenth Amendments to the

United States Constitution and articles 1, 10, 12, 14, and 16 of the Massachusetts Declaration of

Rights. (#1 ¶¶ 137–38.) He further alleges that Knabel, Mitchell, Rand, and Rossi "demonstrated

an animus towards taxi drivers and taxi company owners" like himself. *Id.* ¶ 139. Title 42 U.S.C.

§ 1985(3) "provides a remedy for a conspiracy to violate civil rights if the plaintiff establishes 1)

a conspiracy, 2) a conspiratorial purpose to deprive him of the equal protection of the laws, 3) an

overt act in furtherance of the conspiracy, and 4) an injury to his person or property, or a deprivation of a constitutionally-protected right[.]" *Watson v. Perez*, 168 F. Supp.3d 365, 372 (D. Mass. 2016) (quoting *Torres-Rosado v. Roger-Sabat*, 335 F.3d 1, 14 (1st Cir. 2003) ("To demonstrate conspiracy under § 1983, plaintiff must show 'an actual abridgment of some federally-secured right.'")).

For reasons already explained, plaintiff fails adequately to allege any deprivation of his rights under either the Constitution or the Massachusetts Declaration of Rights. Further, plaintiff fails adequately to allege a conspiracy. Although what constitutes a "'conspiracy is a matter of inference,' a plaintiff must present some facts to show an agreement between the conspirators." *Watson*, 168 F. Supp.3d at 373 (quoting *Estate of Bennett v. Wainwright*, 548 F.3d 155, 178 (1st Cir. 2008)). Plaintiff does not sufficiently allege that any of the municipal defendants formed any such agreement. Count VI against the municipal defendants should be dismissed.

F. Count VII: Vagueness and Overbreadth of Taxi Regulation.

Plaintiff claims that Town Taxi Regulation Section 6.4 "is vague and overbroad, both on its face and as applied, in violation of his right to freedom of speech and due process protected by the United States Constitution and Massachusetts Declaration of Rights, in light of its actual use against [him]." (#1 ¶ 144.) Without more, he cites the regulation, which gives Town officials the discretion to determine what constitutes a "courteous and professional manner" and "interfer[ing] with the business of another taxicab . . . ." *Id.* ¶ 143.

"Vagueness and overbreadth are related concepts, but implicate distinct constitutional rights." *Schoeller v. Bd. of Registration of Funeral Dirs. & Embalmers*, 463 Mass. 605, 611 (2012). "The vagueness inquiry . . . incorporates two basic concerns: 1) concerns about fair notice, and about the related danger of chilling expression, and 2) concerns about excessive discretion being

invested in administering and enforcing officials." *Ridley v. Mass. Bay Transp. Auth.*, 390 F.3d 65, 93 (1st Cir. 2004) (citing *Grayned v. City of Rockford*, 408 U.S. 104, 108–09 (1972)). It "classically arises where the government imposes criminal sanctions for conduct or speech." *Id.* at 94 (citing *U.S. v. Lachman*, 387 F.3d 42, 56–59 (1st Cir. 2004)); *see Reno v. Am. Civil Liberties Union*, 521 U.S. 844, 871–72 (1997); *Vill. of Hoffman Estates v. Flipside Hoffman Estates, Inc.*, 455 U.S. 489, 498 (1982). "[T]he fact that a [regulation] requires some interpretation does not perforce render it unconstitutionally vague." *Barr v. Galvin*, 626 F.3d 99, 107 (1st Cir. 2010) (quoting *IMS Health Inc. v. Ayotte*, 550 F.3d 42, 61 (1st Cir. 2008)).

The doctrine of overbreadth calls for the invalidation of enforcement of any law that "punishes a substantial amount of protected free speech, judged in relation to the statute's plainly legitimate sweep[.]" *United States v. Ackell*, 907 F.3d 67, 73 (1st Cir. 2018) (quoting *Va. v. Hicks*, 539 U.S. 113, 118–19 (2003)). "[R]arely, if ever, will an overbreadth challenge succeed against a law or regulation that is not specifically addressed to speech or conduct necessarily associated with speech (such as picketing or demonstrating)" under the First Amendment. *Id.* (quoting *Hicks*, 539 U.S. at 124). "[T]he overbreadth doctrine's concern with chilling protected speech attenuates as the otherwise unprotected behavior that it forbids [legislatures] to sanction moves from pure speech toward conduct." *Id.* at 73 (quoting *Hicks*, 539 U.S. at 124) (stalking statute at issue was not unconstitutionally overbroad, when it was "plain from the statute's text that it cover[ed] countless amounts of unprotected conduct[,]" even though one could also violate the statute by communicating with victims via interstate commerce). Statutes allowing government officials to regulate non-public forums are given deference, meaning that they "must be upheld so long as [they are] 'reasonable in light of the characteristic nature and function' of that forum." *Ridley*, 390 F.3d at 95 (internal citations and quotation marks omitted) (MBTA guidelines, prohibiting any

advertisement that "demeans or disparages an individual or group of individuals" and using "prevailing community standards" to determine where advertisements run afoul of this standard, were not unconstitutionally vague or overboard, when proposed advertisements were to occur in a non-public forum, there were no notice concerns, and there were no repercussions for submitting a non-conforming advertisement).

Plaintiff fails to state a claim that Section 6.4 is unconstitutionally vague or overbroad under either the United States Constitution or the Massachusetts Declaration of Rights. The regulation at issue, like the statute in *Ackell*, is not addressed to speech or conduct specifically associated with speech. Rather, it simply requires taxicab drivers to behave in a courteous and professional manner, something plaintiff clearly failed to do. Similar to the guidelines in *Ridley*, Section 6.4, as applied to plaintiff, targeted conduct or speech that occurred in a non-public forum. Plaintiff alleges no notice concerns, and no criminal sanctions were imposed for plaintiff's violation of Section 6.4. Count VII should be dismissed.

G. Counts IX and X: Violation of the Wiretap Statute, Mass. Gen. Laws ch. 272, § 99 *et seq.* by the Municipal Defendants & the Town.

"Plaintiff seeks redress for" the municipal defendants and the Town's "unauthorized interception and use of his oral communication pursuant to [Mass. Gen. Laws ch.] 272, § 99(Q)." (#1 ¶ 172 (count IX).) The Wiretap Statute "forbids the interception of certain oral communications by private individuals[.]" *Commonwealth v. Santoro*, 406 Mass. 421, 423 (1990). The statute provides that "[a]ny aggrieved person whose oral . . . communications were intercepted, disclosed[,] or used . . . shall have a civil cause of action against any person who so intercepts, discloses[,] or uses such communications . . . ." Mass. Gen. Laws ch. 272, § 99(Q). However, "[a]ny investigative or law enforcement officer, who . . . has obtained knowledge of the contents of any . . . oral communication, or evidence derived therefrom, may use [or disclose] such contents

in the proper performance of his official duties." *Id.*, § 99(D)(2)(a), (b); *see Commonwealth v. Boyarsky*, 452 Mass. 700, 705 (2008).

Plaintiff claims that Rossi, Manter, and Viera "used Newell's complaint letter" to prepare the police incident report in the course of their employment. (#1 ¶¶ 160–61.) He further claims that Rand, Knabel, Manter, and Mitchell then "used" the complaint letter in the proceedings against him in the course of their employment with the Town. *Id.* ¶¶ 162–63. This interpretation of the phrase "uses such communications" in the Wiretap Statute has been rejected by the Supreme Judicial Court. *See Commonwealth v. Rivera*, 445 Mass. 119, 125–26 (2005) (police did not "use" a recording of incriminating telephone conversations of a defendant, made by a third party without the defendant's knowledge or consent in violation of the statute, by using the recording to identify the defendant and to elicit an admission from him). Count IX should be dismissed against the municipal defendants.

Because none of the municipal defendants can he held liable under Mass. Gen. Laws ch. 272, § 99 *et seq.*, counts IX should also be dismissed against the Town. Although a municipality can be liable when its employees negligently or wrongfully inflict injury on others in the scope of their employment, *see* Mass. Gen. Laws ch. 258, §§ 1, 2, liability cannot attach when the municipality's employees have not done anything negligent or wrongful.[10]

H. Count XI: Violation of Mass. Gen. Laws ch. 268A, § 20 by Manter & the Town.

Plaintiff further alleges that Manter violated Mass. Gen. Laws ch. 268A, § 20, "the conflict of interest statute[,]" by approving Viera's police report in his capacity as a sergeant and then

---

[10] Plaintiff further alleges that the municipal defendants used an earlier, secretly recorded conversation between him and Newell in the proceedings against him in violation of Mass. Gen. Laws ch. 272, § 99. (#1 ¶¶ 177–78 (count X).) Plaintiff fails to state a claim for these alleged violations of the Wiretap Statute under count X for the same reasons he fails to state a claim under count IX. Count X should also be dismissed against both the municipal defendants and the Town.

acting on the report as a member of the Board. (#1 ¶¶ 116–17, 182–83.) Mass. Gen. Laws ch. 268A, § 20 prohibits municipal selectmen from "vot[ing] or act[ing] on any matter[s] which [are] within the purview of the agency by which [they are] employed or over which [they have] official responsibility[.]" Mass. Gen. Laws ch. 268A, § 20(h). Plaintiff claims, without more, that "most— if not all—taxi matters are under the purview of the [Town] police department by which Manter is employed, making most—if not all—participation in taxi matters by him as a . . . selectman a violation" of the statute. (#1 ¶ 183.)

Mass. Gen. Laws ch. 268A, § 20 is enforced by the State Ethics Commission, and does not provide a private right of action for individuals like plaintiff, absent the finding of a violation by the commission and other prerequisites not applicable here. *See* https://www.mass.gov/orgs/state-ethics-commission (last visited Aug. 20, 2020). Plaintiff fails to state a claim against Manter or the Town for violation of Mass. Gen. Laws ch. 268A, § 20, and count XI should be dismissed.

## V.  Conclusion.

For the reasons stated above, it is recommended that the Town and the municipal defendants' motion to dismiss (#21) and Rossi's motion to dismiss (#31) be granted under Fed. R. Civ. P. 12(b)(6), for failure to state a claim. In addition, the court recommends that the individual defendants be found to be immune from suit under the doctrine of qualified immunity.

## VI.  Review by District Judge.

The parties are hereby advised that any party who objects to this recommendation must file a specific written objection thereto with the Clerk of this Court within fourteen days of service of this Report and Recommendation. The written objections must specifically identify the portion of the recommendations, or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly

indicated that failure to comply with Rule 72(b), Fed. R. Civ. P., shall preclude further appellate review. *See Keating v. Sec'y of Health & Human Servs.*, 848 F.2d 271 (1st Cir. 1988); *U.S. v. Emiliano Valencia-Copete*, 792 F.2d 4 (1st Cir. 1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir. 1983); *U.S. v. Vega*, 678 F.2d 376, 378–79 (1st Cir. 1982); *Park Manor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603 (1st Cir. 1980); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

August 26, 2020                                     /s/ M. Page Kelley
                                                    M. Page Kelley
                                                    United States Magistrate Judge